**L. Daniel CALDWELL, Plaintiff**

v.

**J. Michael QUINLAN, Director, Federal Bureau of Prisons, Defendant.**

Civ. A. No. 88–0292.

United States District Court, District of Columbia.

Jan. 25, 1990.

---

L. Daniel Caldwell, pro se.

## OPINION AND ORDER

REVERCOMB, District Judge.

Plaintiff L. Daniel Caldwell, a former inmate incarcerated in the United States Penitentiary in Marion, Illinois,[1] brings this *pro se* civil rights complaint against the Director of Federal Bureau of Prisons ("Director"). In his complaint, plaintiff, a non-smoker, claims that his frequent exposure to passive tobacco smoke violates his Eighth Amendment, Due Process and Equal Protection rights. Plaintiff seeks a declaratory judgment that defendant's actions are unconstitutional and an injunction requiring defendant to provide plaintiff with a completely smoke-free environment. At bar is defendant Director's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### I. *Background*

The Federal Bureau of Prisons has not been indifferent to nonsmoking inmates. Federal regulations provide that

"The Warden, as set forth in this rule, may establish smoking/no smoking areas with the institution.

(a) Smoking is prohibited in those areas where to allow smoking would pose a hazard to health or safety.

(b) Smoking/no smoking areas may be established in other areas of the institution, in the discretion of the Warden." 28 C.F.R. § 551.160 (1988).

At the time plaintiff's complaint was filed, the Warden at Marion had established a nonsmoking/smoking policy designed to accommodate the concerns of both "individuals who choose to smoke or not to smoke." *Institutional Supplement No. Mar. 1653.1*, United States Penitentiary, Marion, Illinois, August 18, 1986 ("*Supplement*"). Among other things, the Marion policy designated conference rooms and classrooms, elevators and the library as

---

**1.** Plaintiff has since been transferred to the United States Penitentiary in Lewisburg, Pennsylvania.

"nonsmoking" areas; it divided the dining hall into "smoking" and "nonsmoking" areas; and let innates determine whether office and workplace areas would be "smoking" or "nonsmoking." Finally, the Warden ordered that two of the prison's modular housing units be designated as "nonsmoking" areas and urged that "every effort ... be made to identify [the] Camp inmates who desire to be placed in the 'No–Smoking' unit and accommodate their placement in the unit on a space-available basis." *Supplement,* ¶ 4(C).

Despite these efforts, plaintiff Caldwell complains that he has been exposed to second-hand smoke. He has occasionally been confined in a two-man cell and/or a dormitory room along with tobacco smokers. He eventually was confined to a single-man cell because he was a nonsmoker, but complains that second-hand smoke drifted over from near-by "smoking" cells. Plaintiff also alleges that second-hand smoke drifted over to the "nonsmoking" sites in the common areas. He further complains of exposure to passive smoke while being transported to and from various prison facilities. Plaintiff asks this Court to order the Director of the Federal Bureau of Prisons to create a totally smoke-free environment for nonsmoking inmates and to separate nonsmokers from smokers in cells, cellhouses, workplaces, indoor recreation areas and all forms of transport throughout the federal correctional system.

## II. *Analysis*

The operation of our correctional facilities is "peculiarly within the province of the legislative and executive branches of our government," not the judicial branch. *Procunier v. Martinez,* 416 U.S. 396, 405, 94 S.Ct. 1800, 1807, 40 L.Ed.2d 224 (1974), *overruled on other grounds* in *Thornburgh v. Abbott,* —— U.S. ——, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989). The "inquiry of federal courts into prison management must be limited to the issue of whether a particular system violates any prohibition of the Constitution, or in the case of a federal prison, a statute. The wide range of 'judgment calls' that meet constitutional and statutory requirements are confided to

officials outside of the Judicial Branch of Government." *Bell v. Wolfish,* 441 U.S. 520, 562, 99 S.Ct. 1861, 1886, 60 L.Ed.2d 447 (1970). With these principles in mind, the Court now examines the claims made in this case.

### A. Eighth Amendment Claims

█ While the authors of the Eighth Amendment drafted a categorical prohibition against the infliction of cruel and unusual punishment, they made no attempt to define the contours of that prohibition. See *Rhodes v. Chapman,* 452 U.S. 337, 345–346, 101 S.Ct. 2392, 2398, 69 L.Ed.2d 59 (1981). Instead the Amendment draws "its meaning from the evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles,* 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958).

This Court readily recognizes that our society has dramatically changed its views about smoking and its effects. Two hundred years ago, many of our most revered founding fathers were tobacco farmers. Today, the United States Surgeon General condemns smoking as a "health hazard of sufficient importance in the United States to warrant appropriate remedial action." Public Health Service, U.S. Department of Health, Education and Welfare, *Smoking and Health* (1964). Nevertheless, contemporary society has yet to view exposure to second-hand smoke as trangressing its "broad and idealistic concepts of dignity, civilized standards, humanity and decency." *Estelle v. Gamble,* 429 U.S. 97, 102, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976). As plaintiff himself notes, the Surgeon General has only recently warned against the effects of second-hand smoke. And, only now is society at large debating whether smoking should be permitted in public areas, the workplace or on common carriers. This Court can not find that the Director's failure to constantly segregate smokers from nonsmokers constitutes "cruel and unusual punishment" and it certainly cannot find that plaintiff's occasional exposure to smoke drifting over from designated

"smoking" areas violates the Eighth Amendment.[2]

### B. Due Process Claims

■ The Due Process clause guarantees that no person shall "be deprived of life, liberty, or property, without due process of law." The touchstone of due process is protection of the individual against arbitrary action of government (*Dent v. West Virginia*, 129 U.S. 114, 9 S.Ct. 231, 32 L.Ed. 623 (1889)) and prisoners claiming a due process violation must demonstrate that they have been deprived of a protected liberty or property interest by arbitrary government action. *Meachum v. Fano*, 427 U.S. 215, 223–224, 96 S.Ct. 2532, 2537–2538, 49 L.Ed.2d 451 (1976).

■ This Court is unable to find that defendant's smoking policy involves a protected liberty interest. Individuals do not have a constitutional right to be free from passive smoke. See *Kensell v. State of Okl.*, 716 F.2d 1350 (10th Cir.1983); *Fed. Emp. for Non–Smokers' Rights (FENSR) v. U.S.*, 446 F.Supp. 181, 183–185 (D.D.C. 1978), *aff'd* 598 F.2d 310 (D.C.Cir.1979), *cert. denied* 444 U.S. 926, 100 S.Ct. 265, 62 L.Ed.2d 182 (1979); *Gasper v. Louisiana Stadium and Expo. Dist.*, 577 F.2d 897 (5th Cir.1978), *cert. denied* 439 U.S. 1073, 99 S.Ct. 846, 59 L.Ed.2d 40 (1979). Nor does the Bureau of Prisons' smoking policy somehow create a liberty interest to a smoke-free prison term. It provides only that a Warden *may* implement a smoking policy at his discretion. It is clear from the allegations that the Marion policy attempted to accommodate the habits of all inmates, both smokers and nonsmokers.

■ Although the convicted felon retains a variety of important rights that the courts must be alert to protect, this Court can not find that exposure to passive smoke triggers the protections of the Due Process Clause.[3]

### III. *Conclusion*

The Constitution does not mandate comfortable prisons, and prisons which house persons convicted of serious crimes cannot be free of discomfort. *Rhodes v. Chapman*, 452 U.S. at 349, 101 S.Ct. at 2400. For this Court to hold that the Constitution empowered it to regulate second-hand smoke in a correctional facility "would support the most extrer.e expectations of the critics who fear the federal judiciary as a superlegislature promulgating social change under the guise of securing constitutional rights." See *Kensell v. State of Okl.*, 716 F.2d 1350, 1351 (10th Cir.1983). The Court agrees with the United States District Court of the Northern District of Indiana—"smoking is a societal issue best resolved by the executive and legislative branches of government." *Gorman v. Moody*, 710 F.Supp. 1256, 1262 (N.D.Ind. 1989).

Accordingly, plaintiff's complaint is DISMISSED in its entirety.

---

2. *Avery v. Powell*, 695 F.Supp. 632 (D.N.H.1988) is distinguishable. Plaintiff there requested the Warden to designate smoking and nonsmoking areas, not to provide completely separate facilities where areas had already been designated. Even so, this Court rejects the *Avery* rationale and adopts the reasoning in *Gorman v. Moody*, 710 F.Supp. 1256 (N.D.Ind.1989).

3. Plaintiff's equal protection claim must also fail. See *Taylor v. Rogers*, 781 F.2d 1047 (4th Cir.1986); *Bassett v. Tahash*, 315 F.2d 393 (8th Cir.1963), *cert. denied* 374 U.S. 822, 83 S.Ct. 1921, 10 L.Ed.2d 1080 (1963).