**William J. WEST, Plaintiff,**

v.

**Ellis B. WRIGHT, Jr., et al.,
Defendants.**

**Civ. A. No. 89–0453–AM.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Sept. 28, 1990.

Revised Oct. 16, 1990.

William J. West, Lawrenceville, Va., pro se.

Richard F. Gorman, III, Asst. Atty. Gen., Com. of Va., Richmond, Va., for defendants.

### MEMORANDUM OPINION

ELLIS, District Judge.

Plaintiff William West, an inmate at Brunswick Correctional Center ("Brunswick"), brings this *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983, alleging that his living conditions violate his Eighth Amendment right to be free from cruel and unusual punishment. Specifically, plaintiff claims he is forced to inhale harmful smoke because he lives in an environment where a large number of prisoners smoke cigars and cigarettes. Defendants, correctional officers at Brunswick,

seek summary judgment. Plaintiff was advised of his right to respond to defendants' motion and has done so. Accordingly, this matter is now ripe for disposition, and for the reasons stated below, the Court grants defendants' motion for summary judgment.

Plaintiff claims that defendants have been deliberately indifferent to a potential medical condition from which plaintiff might suffer if he is compelled to live in the existing conditions at Brunswick. He alleges that the air circulation vents in his cell and in each of the four wings off each central room serve only to move the indoor pollution throughout the entire building without eliminating it. He claims, and the record does not show otherwise, that no filters are installed to capture indoor air pollutants.

Plaintiff's medical records reflect that on May 4, 1989, he complained of allergies related to cigarette smoke and requested assignment to a cell with a nonsmoker or to a single cell. Dr. Thompson, a physician at Brunswick, examined plaintiff and found his lungs were clear. He noted it was possible there might be some irritation from smokers in adjacent cells, but there were no indications of allergies. Dr. Thompson concluded that a single cell was not warranted but stated he had no objection to an administrative decision to place plaintiff with a nonsmoker or in a single cell.[1] Plaintiff's medical records further reflect that he was seen in the medical department for minor ailments in connection with cigarette smoke and that these complaints were resolved promptly with appropriate treatment. Nothing in plaintiff's record indicates that he had any serious physical condition aggravated by environmental tobacco smoke.

Defendants do not dispute that some prisoners smoke. They contend, however, that adequate measures were taken to provide reasonably smoke-free air for prisoners wishing to live in a smoke-free environment. Specifically, it is undisputed that

Brunswick has 764 inmates in either single or double cells. Each cell has a window which the inmate may open or close as he chooses. Each cell and day room also has output and input vents that provide continuous circulation of natural air for adequate ventilation. Inmates assigned to the general population may also have personal fans in their cells and pedestal fans are located in each of the housing units and are operated by the inmates. Smoking is prohibited in the library, dining hall, gymnasium and medical department.[2] Furthermore, inmates in the general population are afforded recreational opportunities and are confined to their housing units only during count or after knockdown in the evening.

As of February 1990, plaintiff was in the general population and was therefore entitled to a personal fan in his cell.[3] Moreover, plaintiff, who was housed in a double cell in honor housing, was entitled to request to be paired with a nonsmoker. Yet, plaintiff failed to do so prior to filing this suit. In any event, plaintiff has been paired with a nonsmoker. Plaintiff claims that notwithstanding the safeguards, the failure of prison officials to place him in a smoke-free single cell constitutes deliberate medical indifference to his serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment).

Courts within the Fourth Circuit and in other jurisdictions have held that a complaint that prison officials have been indifferent to a plaintiff's exposure to environmental tobacco smoke that aggravates an existing medical condition states a claim for which relief may be granted under the Eighth Amendment. In Beeson v. Johnson, 668 F.Supp. 498 (E.D.N.C.1987), reversed in part on other grounds, 894 F.2d 401 (4th Cir.1990), plaintiff's Eighth Amendment claim based on his exposure to

1. Affidavit of Wallace Horne, M.D., physician at Brunswick Correctional Center.

2. Affidavit of Ray Shurling, Operations Officer at Brunswick.

3. Affidavit of Ray Shurling, Operations Officer at Brunswick.

environmental tobacco smoke survived summary judgment in light of his serious preexisting respiratory problem and the failure of prison officials to install any safeguards against the smoke. *See also Franklin v. Oregon, State Welfare Division* 662 F.2d 1337, 1346–47 (9th Cir.1981) (reversing district court's dismissal and remanding where plaintiff alleged confinement in cell with heavy smoker aggravated plaintiff's throat tumor). In sharp contrast, plaintiff here has no serious preexisting respiratory problems that may be aggravated by exposure to environmental tobacco smoke. Rather, plaintiff alleges that exposure to environmental tobacco smoke alone is threatening his health.

Research discloses no published controlling Fourth Circuit decision on whether, and under what circumstances, exposure to environmental tobacco smoke without the presence of preexisting medical ailments violates provisions of the Eighth Amendment guaranteeing protection from cruel and unusual punishment. Courts in other jurisdictions have divided on whether involuntary exposure to environmental tobacco smoke may form the basis of an Eighth Amendment claim. In the only published circuit opinion found that squarely addresses this point, the Tenth Circuit held that "defendants' policy of permitting the indefinite double-celling of smokers with non-smokers against their expressed will can amount to deliberate indifference to the health of nonsmoking inmates in violation of the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment." *Clemmons v. Bohannon*, 918 F.2d 858 (10th Cir.1990). In *Clemmons*, the district court had concluded that Clemmons' involuntary exposure to environmental tobacco smoke resulting from double-celling with a smoker was a mere "inconvenience" without constitutional significance. The Tenth Circuit reversed the district court's grant of summary judgment for defendants. The Court remanded for consideration of the "genuine fact issue [of] whether the type of exposure potentially faced by a nonsmoking prisoner double-celled with a smoker constitutes a health hazard at least as significant as denial of exercise." *Id.;*

*see also Avery v. Powell*, 695 F.Supp. 632 (D.N.H.1988) (denying government's motion to dismiss and holding that plaintiff "might establish that his constant involuntary exposure to ETS is harmful to his health" and constituted cruel and unusual punishment).

In contrast, several district courts have found that claims of exposure to environmental tobacco smoke failed to implicate the Eighth Amendment. In *Caldwell v. Quinlan*, 729 F.Supp. 4 (D.D.C.1990), the court observed that "contemporary society has yet to view exposure to secondhand smoke as transgressing its 'broad and idealistic concepts of dignity, civilized standards, humanity and decency.'" 729 F.Supp. at 6 (*quoting Estelle v. Gamble*, 429 U.S. at 102, 97 S.Ct. at 290). But *Caldwell* must be construed in light of its facts. In *Caldwell*, the prison had established a smoking policy. Certain common areas were designated nonsmoking; the dining hall had a nonsmoking area; prisoners determined whether work areas would be smoking or nonsmoking, and two of the prison's housing units were designated nonsmoking. In this context, the Court concluded that it could "not find that the Director's failure to constantly segregate smokers from nonsmokers constitutes 'cruel and unusual punishment' and it certainly cannot find that plaintiff's occasional exposure to smoke drifting over from designated 'smoking' areas violates the Eighth Amendment." 729 F.Supp. at 6–7. Other cases in which courts found that claims failed to implicate the Eighth Amendment include *Wilson v. Lynaugh*, 878 F.2d 846 (5th Cir.1989) (holding that 1986 Surgeon General's Report on effects of environmental tobacco smoke did not constitute significant fact creating new legal situation which would allow for relitigation of plaintiff's request for a smoke-free confinement), and *Gorman v. Moody*, 710 F.Supp. 1256, 1262 (N.D.Ind.1989) (exposure to ETS does not implicate the Eighth Amendment because "society cannot yet completely agree on the propriety of nonsmoking areas").

In the instant case, the Court is not called upon to determine whether the indef-

inite confinement of a nonsmoking prisoner against their will in a cell with a smoker implicates the Eighth Amendment. Rather, it is undisputed that defendants have implemented significant safeguards for the protection of nonsmokers, including the opportunity to be assigned to a nonsmoking cell with a fan, output and input vents, and a window that may be opened.[4] These facts preclude the conclusion that defendants were deliberately indifferent to either plaintiff's serious medical needs or to conditions constituting a known threat to plaintiff's health. To hold that the circumstances existing here rise to the level of a constitutional violation would require radical restructuring of prison operations, a result neither contemplated, nor required, by the Eighth Amendment.[5]

The Court intimates no view on whether involuntary exposure to environmental tobacco smoke under different circumstances might run afoul of the Eighth Amendment's prohibition on cruel and unusual punishment. Here, the Court concludes only that where plaintiff does not suffer from any preexisting medical condition that is aggravated by environmental tobacco smoke, and where defendants have implemented significant safeguards to protect nonsmokers from environmental tobacco smoke, the factual circumstances do not support a claim of cruel an unusual punishment.

Accordingly, for the reasons stated, defendants' motion for summary judgment is granted and this action dismissed.

An appropriate order has issued.

---

4. In addition, as noted previously, pedestal fans are located in each of the housing units. Smoking is prohibited in the library, dining hall, gymnasium and medical department. Furthermore, inmates in the general population are afforded recreational opportunities and are confined to their housing units only during count or after knockdown in the evening.

5. While the record in this case indicates that officials at the Brunswick facility are adequately accommodating both smokers and nonsmokers, the physical plants of other prisons may not permit such an accommodation. In such circumstances, a total ban on smoking may be appropriate. *See Doughty v. Bd. of County Comm'rs,* 731 F.Supp. 423 (D.Colo.1989) (holding that complete ban on smoking in county jail does not violate Eighth or Fourteenth Amendments); *Elliott v. Bd. of County Comm'rs,* 796 P.2d 71 (Colo.App.1990) (same); *Grass v. Sargent,* 903 F.2d 1206 (8th Cir.1990) (upholding ban on smoking in visitation area of prison and holding that "[t]here is no constitutional right to smoke in prison").