Kevin C. PURVIS, Plaintiff, Appellant,

v.

Joseph PONTE, et al.,
Defendants, Appellees.

No. 90–1884.

United States Court of Appeals,
First Circuit.

Submitted Nov. 30, 1990.

Decided April 2, 1991.

---

Kevin C. Purvis, on brief pro se.

James M. Shannon, Atty. Gen. and Judy G. Zeprun, Asst. Atty. Gen., Boston, Mass., on brief for defendants, appellees.

Before CAMPBELL, SELYA and CYR, Circuit Judges.

PER CURIAM.

Pro se prisoner Kevin Purvis appeals from a district court order dismissing his civil rights complaint as frivolous under 28 U.S.C. § 1915(d).[1] Purvis sought declaratory, injunctive and monetary relief for alleged violations of his Eighth Amendment right to be free from cruel and unusual punishment while he was incarcerated at the Old Colony Corrections Center. While not precisely articulated, the gravamen of the complaint is that the defendant prison officials were deliberately indifferent to the need for protection from inmate threats and assaults which Purvis had as a "known homosexual."[2]

---

1. 28 U.S.C. § 1915(a), in relevant part, provides that,

> Any court of the United States may authorize the commencement ... of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees and costs or security therefor, by a person who makes affidavit that he is unable to pay such costs or give security therefor....
> An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith.

Section 1915(d) provides that a court "may dismiss the case if ... [the court is] satisfied that the action is frivolous or malicious."

2. The defendants, who are sued in their individual and official capacities, are Joseph Ponte, administrative head of the Old Colony Corrections Center, and three corrections officers identified only as John Doe Numbers 1 and 2 and Jane Doe. The complaint was accompanied by motions for a temporary restraining order and a preliminary injunction and a memorandum in support of the motion for injunctive relief. We construe the legal claims in these filings as part of plaintiff's complaint. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972).

The complaint was referred to a magistrate judge (hereafter, magistrate) who filed a report recommending that Purvis be allowed to proceed in forma pauperis (IFP) and that the complaint be dismissed as frivolous. While the magistrate relied on 28 U.S.C. § 1915(d) as authority for dismissal, the report uses the language of Fed.R. Civ.P. 12(b)(6) with respect to Purvis's Eighth Amendment claim (*i.e.*, "[p]laintiff clearly fails to state a claim upon which relief can be granted on this score"). Purvis filed an objection to this report with a supporting memorandum and affidavit which elaborated further on the facts alleged in his complaint. The district court duly considered these filings and adopted the recommendation of the magistrate. This appeal followed. We affirm.

The following facts were alleged by Purvis, and we assume for purposes of this opinion that they are true. While confined at the Old Colony Corrections Center on April 30, 1990, Purvis was assigned to a cell to live with an inmate who objected to Purvis's sexual orientation and who had been a source of unspecified "difficulties" for Purvis. The complaint alleged that because the defendants "neglected to place [Purvis] in a room with a more compatible room-mate" his assigned room-mate elected to go to the segregation unit. Consequently, Purvis spent the night of April 30, 1990 alone in his cell. The following day, a second inmate was assigned to Purvis's cell. This inmate allegedly demonstrated hostile feelings towards Purvis due to his sexual orientation. Both Purvis and his assigned room-mate complained to corrections officers that "a strong likelihood of physical harm" to Purvis existed if one of them was not reassigned. This inmate also opted to be confined in segregation over living with Purvis. A third inmate was assigned to Purvis's cell, who remained there. The following morning (*i.e.*, May 2, 1990) Purvis observed this inmate, who allegedly suffered from some mental illness,

"lurking" over him. When questioned about this activity, the inmate responded only with laughter. Purvis apprised corrections officials that he feared for his safety due to this erratic behavior and requested a room change. After an "exhaustive" effort to "secure another room and/or room-mate,"[3] Purvis was forced to choose between returning to his cell to an inmate he perceived as harmful or refusing to do so. Purvis chose the latter. As a result, Purvis was placed over his objection in segregation on awaiting action status. While confined in segregation, Purvis was assigned to a cell with an inmate whom he feared because the inmate previously had refused to live with black males.[4] Approximately a week later, Purvis was transferred back to the orientation unit, where he continued to convey to prison staff the importance of carefully screening his prospective cell-mates. On May 15, 1990, Purvis was assigned to a cell with an inmate who had previously vented his hatred and disgust for homosexuals. Purvis reported this to correctional staff in an effort to secure an alternative placement, but the defendants, Purvis says, were uncooperative. Purvis delivered a letter to defendant Ponte on May 16, 1990 and asked him to order Purvis moved to another room. Purvis explained that if Ponte did not do so, Purvis "would be forced to go into the segregation unit at the end of the evening." This, indeed, came to pass, and Purvis was placed in segregation with an inmate who had previously assaulted a corrections officer, notwithstanding the alleged availability of several unoccupied rooms in the segregation unit.

Purvis alleged that the defendants deprived him of his constitutional right to protection from harm at the hands of other prisoners by failing to screen his cell-mates and by requiring Purvis to incur the sanction of segregation to protect himself.[5] At

---

3. The complaint does not clarify whether Purvis, the defendants, or both undertook this effort.

4. The district court noted that Purvis does not allege that he is black, but the court nonetheless

assumed this is so for purposes of evaluating the complaint. We make the same assumption.

5. The complaint prayed for injunctive relief in the form of orders prohibiting the defendants from confining Purvis in segregation or other-

the outset, we observe that Purvis no longer resides at the Old Colony Corrections Center. Thus, his complaint is moot insofar as it seeks equitable relief. *See, e.g., Vosburg v. Solem*, 845 F.2d 763, 770 (8th Cir.), *cert. denied*, 488 U.S. 928, 109 S.Ct. 313, 102 L.Ed.2d 332 (1988). Respecting Purvis's damages claim, we agree that the complaint failed to state a claim upon which relief can be granted both on its face and as supplemented by Purvis's subsequent filings. Obviously, the Eighth Amendment does not entitle Purvis to the room-mate of his choice. Purvis argues that his complaint should not be read to claim so much, and that he has a constitutional right to have his prospective cell-mates screened to remove the risk of "gay bashing." However, Purvis's allegations do not indicate that he was ever subjected to a serious risk of harm from his various room-mates.

We fully accept that "prison officials have a duty under the [Eighth] and [Fourteenth] amendments to protect prisoners from violence at the hands of other prisoners." *Leonardo v. Moran*, 611 F.2d 397, 398–99 (1st Cir.1979). *Accord Street v. Fair*, 918 F.2d 269, 271 (1st Cir.1990); *Ayala Serrano v. Gonzalez*, 909 F.2d 8, 14 (1st Cir.1990); *Cortes–Quinones v. Jimenez–Nettleship*, 842 F.2d 556, 558 (1st Cir.), *cert. denied*, 488 U.S. 823, 109 S.Ct. 68, 102 L.Ed.2d 45 (1988). Moreover, a prisoner need not wait to be assaulted to obtain relief for the infringement of this right. *Leonardo*, 611 F.2d at 399, *quoting Woodhous v. Virginia*, 487 F.2d 889, 890 (4th Cir.1973). *See also Ramos v. Lamm*, 639 F.2d 559, 572 (10th Cir.1980), *cert. denied*, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981). "[P]rison officials have a corresponding obligation under 42 U.S.C. § 1983 to exercise reasonable care to provide reasonable protection from an unreasonable risk of harm." *Lovell v. Brennan*, 728 F.2d 560, 564 (1st Cir.1984). An unreasonable risk of harm is established where a plaintiff shows that there was "a 'strong likelihood' that violence would occur." *Benson v. Cady*, 761 F.2d 335, 339–40 (7th Cir.1985) (citation omitted).

Purvis's allegations do not, however, indicate either that the prison authorities subjected him to an unreasonable risk of harm or that defendants failed to respond reasonably to his fears. Of the six room-mates assigned to Purvis during the short time in issue, only three are alleged to have objected to Purvis's sexual orientation. Two of these elected to be confined in segregation rather than room with Purvis.[6] As between Purvis and these room-mates, it is unclear who was to blame for the friction. In any case, any perceived threat to Purvis's safety was short-lived and removed when separation occurred. Purvis says he had previously heard his fifth roommate express hostility towards homosexuals in general, but Purvis does not claim that this inmate threatened him. We agree with the Fourth Circuit that, "[t]o establish fear of constitutional dimensions, an inmate must show more than simple anxiety." *Shrader v. White*, 761 F.2d 975, 979 (4th Cir.1985). The complaint simply fails to allege sufficient facts to support Purvis's claim that he suffered harm by his exposure to these room-mates, which, in each case, lasted less than twenty-four hours.

The circumstances of Purvis's relations with his other room-mates are also cloudy in regard to the existence of any actual threat to him. The allegations boil down to claims that Purvis was afraid of his room-mates because of his perception that they were hostile or behaved erratically. "[T]he Constitution does not mandate comfortable prisons, and prisons which house persons convicted of serious crimes cannot be free of discomfort." *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S.Ct. 2392, 2400, 69 L.Ed.2d 59 (1981). Allega-

wise disciplining him for refusing "to be locked in a room with a potentially dangerous individual." The complaint further prayed for compensatory and punitive damages for the mental anguish alleged to have resulted from the defendants' deliberate indifference to Purvis's right to security.

6. Purvis obviously has no standing to complain that such confinement violated the constitutional rights of these inmates.

tions that an inmate's cell-mate has exhibited unspecified general "hostility" towards homosexuals, has assaulted a corrections officer, has refused to live with Blacks, or exhibits bizarre behavior[7], are not, standing alone, sufficient to establish that the inmate was subject to an unreasonable risk of harm. We thus agree with the magistrate's conclusion that Purvis's Eighth Amendment allegations "fail[ ] to state a claim upon which relief may be granted...".[8]

■ This does not, however, end the matter. This complaint was purportedly dismissed as frivolous under 28 U.S.C. § 1915(d). Had this occurred without adequate notice and opportunity for Purvis to supplement his initial allegations, the dismissal would have been premature. *Neitzke v. Williams*, 490 U.S. 319, 328–331, 109 S.Ct. 1827, 1833–1834, 104 L.Ed.2d 338 (1989); *see Street v. Fair*, 918 F.2d at 273 (reversing sua sponte dismissal of Eighth Amendment claim for frivolousness where it failed to state a claim upon which relief could be granted, but plaintiff was not given opportunity to cure this deficiency by amendment). Even conclusory and unsupported assertions implying that a known homosexual inmate had been threatened with substantial risks of harm requiring protection, and had been denied protection, would have sufficient "arguable" legal merit to withstand summary dismissal sua sponte. Moreover, Purvis's factual allegations here were not, on their face, "fantastic or delusional." *Neitzke*, 490 U.S. at 327–328, 109 S.Ct. at 1833.

The Supreme Court's rationale in *Neitzke* was that the sua sponte dismissal of complaints under 28 U.S.C. § 1915(d) simply for failure to state a claim deprived indigent pro se litigants of the procedural pro-

tections routinely afforded paying plaintiffs. As the Supreme Court observed, "a plaintiff with an arguable claim is ordinarily accorded notice of a pending motion to dismiss for failure to state a claim and an opportunity to amend the complaint before the motion is ruled upon." *Neitzke*, 490 U.S. at 329, 109 S.Ct. at 1834. Notice and opportunity to amend affords the paying plaintiff a chance to cure deficiencies in the complaint, an opportunity not afforded indigent litigants when their complaints are dismissed sua sponte for failure to state a claim. To prevent this inequity, the Supreme Court ruled that a court could not summarily dismiss an IFP complaint sua sponte under 28 U.S.C. § 1915(d) merely for failure to state a claim. *Neitzke*, 490 U.S. at 324–331, 109 S.Ct. at 1834. Summary dismissal at that stage was reserved only for hard-core frivolousness.

The instant complaint was not frivolous in the hard-core sense described in *Neitzke*. But while dismissed under 28 U.S.C. § 1915(d), we think its dismissal did not contravene *Neitzke*. This is so because Purvis received, in substance, the very same procedural protections that were lacking in *Neitzke*. Purvis's complaint first went to the magistrate who issued a report noting the deficiencies therein. Purvis received a copy of the report and in response thereto he filed objections with a supporting memorandum which fleshed out and sought to explain his allegations. Even as supplemented, however, the complaint contained the deficiencies we have noted. The district court dismissed, but upon receiving notice of this, Purvis filed a motion for reconsideration with a supporting memorandum and affidavit. These documents essentially restated his original allegations, and again failed to enumerate facts suffi-

---

7. Purvis himself elected segregation rather than live with his third assigned room-mate, who acted oddly. We do not view the circumstances alleged by Purvis (*i.e.*, that this room-mate was mentally ill, and that Purvis found him "lurking" over him one morning, and that the room-mate laughed in response to Purvis's question), sufficient to suggest threatening conduct at an unconstitutional level given its brief duration and the absence of additional facts to flesh the situation out. The same is so as to a room-mate's past refusal to live with Blacks.

8. The magistrate also ruled that Purvis failed to state a claim under the due process clause since *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), established that prisoners have no liberty or property interest in being placed in a particular institution nor in a particular room in an institution and that the complaint was "completely devoid" of any facts indicating an equal protection violation. We agree that these claims were properly dismissed as frivolous in that the former had no merit in law, while the latter was factually baseless.

cient to support Purvis's Eighth Amendment claim.[9] Purvis thus has received the equivalent of all the "practical protections" typically given paying plaintiffs under Fed. R.Civ.P. 12(b)(6). *Neitzke*, 490 U.S. at 330, 109 S.Ct. at 1834. We accordingly uphold the dismissal of Purvis's Eighth Amendment claim for failure to state a claim upon which relief can be granted. *Compare Pavilonis v. King*, 626 F.2d 1075, 1078 (1st Cir.), *cert. denied*, 449 U.S. 829, 101 S.Ct. 96, 66 L.Ed.2d 34 (1980) (affirming dismissal where magistrate's report alerted plaintiff to complaint's deficiencies, which plaintiff failed to cure).

We deny defendants' request for costs on appeal.

*Judgment affirmed.*

---

9. The district court denied the motion for reconsideration, noting that the representations made therein did not affect its original judgment. We agree.