974 F.2d 1329
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Orlando T. MELENDEZ, Plaintiff, Appellant,
v.
Michael J. CUNNINGHAM, Warden, etc., et al., Defendants, Appellees.
 No. 91-1950.
 United States Court of Appeals,
First Circuit.
 September 10, 1992
 
 Appeal from the United States District Court for the District of New Hampshire
 Orlando T. Melendez on brief pro se.
 John P. Arnold, Attorney General, and William C. McCallum on brief for appellees.
 D.N.H.
 AFFIRMED.
 Before Breyer, Chief Judge, Selya and Cyr, Circuit Judges.
 Per Curiam.
 
 
 1
 Orlando T. Melendez, a New Hampshire inmate, appeals pro se the dismissal of his 42 U.S.C. § 1983 action against certain prison officials who, Melendez claimed, have inflicted cruel and unusual punishment in violation of the Eighth Amendment by causing his involuntary exposure to secondary cigarette smoke. Finding no error, we affirm the dismissal.
 
 
 2
 * Melendez' original complaint, filed in July 1990, was spare. It alleged that he, a non-smoker, had been denied repeated requests to be bunked with a similar-minded inmate, in violation of the New Hampshire Department of Corrections Policy and Procedure Directive ("PPD"). The PPD, appended to the complaint, prohibits smoking in enclosed areas of the state prison, except in designated smoking areas. Melendez complained that his cellmates smoked "too much", aggravating his allergies and sinus problems. Statements appended to a subsequent motion for a temporary restraining order allege that in July 1990 Melendez was forced to leave a non-smoking cellmate and move in with an inmate who smoked three packs of cigarettes a day, and that in August 1990 prison officials confiscated 27 packs of cigarettes from his cellmate.
 
 
 3
 The in forma pauperis complaint was initially referred to a magistrate-judge, who decided, essentially, that Melendez had raised a potentially viable claim of cruel and unusual punishment under the Eighth Amendment, but that because requisite details as to the time, degree and nature of the offending exposure were lacking the complaint failed to state a cause of action. Relying on Avery v. Powell, 695 F. Supp. 632 (D.N.H. 1988), the magistrate recommended that service upon the defendants be accomplished and that Melendez be allowed "to amend his complaint so as to allege sufficient facts in support of a claim that he has been subjected to constant involuntary exposure to [environmental tobacco smoke] ETS." The magistrate's report noted that while Avery announced that such exposure might constitute punishment for Eighth Amendment purposes, id. at 640, it was decided prior to the implementation of the PPD policy which was "designed to segregate smoking and non-smoking inmates."[1]
 
 
 4
 Plaintiff's amended complaint clarified that the July 1990 housing assignment with a smoker was involuntary, but otherwise reiterated the facts alleged earlier, only adding that his sinus trouble was "very bad", that his cellmate "smoked a lot", which "really bother[ed]" him, and that his "medical condition" was "recorded in the infirmary records."
 
 
 5
 Upon further review, the magistrate-judge concluded that Melendez' complaint was not legally or factually frivolous under 28 U.S.C. § 1915(d) and the teaching of Neitzke v. Williams, 490 U.S. 319 (1989), but still failed to state a cause of action because, even though notified about the deficiencies that needed to be rectified in order to state a claim under Avery, Melendez had not "set forth the length of time he was forced to live with an inmate who smoked or describe[d] the frequency with which his cellmates smoked in his presence." A claim of involuntary exposure to ETS must, the magistrate decided, state, at a minimum, the extent of the risk. The magistrate concluded that Melendez had done no more than indicate that he was subjected to ETS on a sporadic and temporary basis. Having previously warned plaintiff that dismissal was in the offing unless a cure was affected, the magistrate recommended dismissal under the authority of Purvis v. Ponte, 929 F.2d 822, 826 (1st Cir. 1991) (when notified of deficiencies in in forma pauperis complaint and given an opportunity to amend, sua sponte dismissal for failure to state a claim proper). The district court approved.
 
 II
 
 6
 This court has not had occasion to address the legal standard governing inmate ETS Eighth Amendment claims.[2] What is clear is that prison officials may not be deliberately indifferent to a prisoner's health or safety, that is, may not engage in "acts or omissions so dangerous (in respect to health and safety) that a defendant's knowledge of a large ... risk can be inferred." Cortes-Quinones v. Jimenez-Nettleship, 842 F.2d 556, 558 (1st Cir. 1988) (internal punctuation and citations omitted). Whether an inmate's involuntary exposure to second-hand smoke is characterized as an inhumane condition of confinement or inattention to serious medical needs, or a combination of both, Melendez must eventually prove that the defendants, in so endangering him, acted with deliberate indifference. See Wilson v. Seiter, 111 S. Ct. 2321, 2327 (1991).
 
 
 7
 To that end, in order successfully to allege an Eighth Amendment violation, a plaintiff must first plead facts which, if true, establish an objective component that a "sufficiently serious" deprivation occurred. Id. at 2324. Seriousness is measured in response to "contemporary standards of decency". Hudson v. McMillian, 112 S. Ct. 995, 1000 (1992) (citation omitted). "Routine discomforts" of prison life do not suffice. Id. The objective component requires proof that the alleged wrongdoing deprived the inmate of " 'the minimal civilized measure of life's necessities.' " Wilson, 111 S. Ct. at 2324 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). The Court has made plain that only deliberate indifference to "serious" medical needs or "extreme deprivations" regarding the conditions of confinement will implicate the protections of the Eighth Amendment. Hudson, 112 S. Ct. at 1000.
 
 
 8
 Second, a subjective element must be shown that the prison officials, faced with a charge of inflicting cruel and unusual punishment, "act[ed] with a sufficiently culpable state of mind." Wilson, 111 S. Ct. at 2324; see also Hudson, 112 S. Ct. at 999. Mere negligence or inadvertent failure are insufficient mental states for Eighth Amendment purposes which require "actual knowledge of impending harm, easily preventable." DesRosiers v. Moran, 949 F.2d 15, 19 (1st Cir. 1991). As we conclude that Melendez has failed to allege any wrongdoing objectively "harmful enough" to establish a cognizable Eighth Amendment claim, Wilson, 111 S. Ct. at 2326, we need not consider the subjective inquiry.
 
 III
 
 9
 We begin by noting that Melendez does not allege that the defendants have ignored his serious medical needs,[3] but rather that they were indifferent to his requests to be housed with a non-smoker in violation of the prison system's stated smoking policy. Liberally read, the gist of his pro se complaint appears to be that, as a result, his health was endangered by exposure to involuntary environmental tobacco smoke (ETS).[4] Assuming that allegations of constant compelled exposure to second-hand smoke as a condition of confinement state a cognizable Eighth Amendment claim because the plaintiff might be able "to show at trial that exposure to ETS is dangerous to physical health," Avery, 695 F. Supp. at 639, a question we do not decide, Melendez' allegations do not establish a deprivation that is sufficiently serious to satisfy the requisite objective component of such a claim.
 
 
 10
 Here, despite assertions that he was repeatedly refused housing with non-smokers, Melendez' cellmates were usually non-smokers. After judgment entered against him, Melendez attempted to file an affidavit and amendment to his complaint. While not considered by the district court, it indicates that from 1989 to 1991 he was placed with smokers a total of 36 weeks, for periods of time lasting from 2 weeks to at most three months. Thus, well over half of that time, he was housed with non-smokers. Further, he presumably was not continually confined to his cell. According to the terms of the PPD, which applies to employees of the prison system and inmates alike, smoking is prohibited and restricted to "effectively segregated" designated areas. Melendez does not allege that he was subjected to ETS elsewhere in the prison. See Johnson v. Pelker, 891 F.2d 136, 138 (7th Cir. 1989) (totality of conditions of confinement relevant to deprivation of prisoner basic human needs); Clay v. Miller, 626 F.2d 345, 347 (4th Cir. 1980) (overall prison conditions relevant to Eighth Amendment lack-of-exercise claim). Consequently, since Melendez cannot show more than intermittent ETS exposure, he cannot succeed on the claim that he was deprived of the minimal civilized measure of life's necessities.[5]
 
 IV
 
 11
 In sum, because Melendez does not allege facts which, if true, would establish ETS exposure that was constant or long-term, or that the levels of exposure were otherwise unreasonable, we agree with the district court that he could not prove that the risk was so serious and the deprivation so extreme that it posed an inordinate threat to his health. See West v. Wright, 747 F. Supp. 329, 332 (E.D. Va. 1990); Caldwell v. Quinlan, 729 F. Supp. 4, 6-7 (D.D.C. 1990). Having failed, despite repeated attempts, to plead sufficient facts to establish the Eighth Amendment's objective component, the complaint was properly dismissed for failure to state a claim.
 
 
 12
 Affirmed.
 
 
 
 [1]
 The magistrate found that the PPD, by its express terms, was promulgated to protect inmate and staff health in compliance with a 1981 statute regulating smoking in enclosed public places, N.H. Rev. Stat. Ann. § 155:45-49 (repealed and replaced by "The Indoor Smoking Act", § 155: 64-77 (1990)). The magistrate also noted that, under the PPD, non-smokers enjoyed a preferred status and a smoker assigned to a non-smoker roommate in Melendez' housing unit "may not smoke in th[at] room or cell."
 
 
 [2]
 While it is well established that state actors may not subject prisoners to deliberate indifference to serious medical needs, Estelle v. Gamble, 429 U.S. 97, 104 (1976), the Supreme Court has not yet decided whether and to what degree a potential environmental hazard, such as involuntary exposure to secondary smoke, violates an inmate's constitutional rights. However, this may be answered next term. See McKinney v. Anderson, 959 F.2d 853, 854 (9th Cir.) (housing a prisoner so as to expose him to levels of ETS that pose an unreasonable risk of harming his health is cruel and unusual punishment), cert. granted sub nom. Helling v. McKinney, 60 U.S.L.W. 3878 (U.S. Jun. 29, 1992) (No. 91-1958) (Question presented: does state prison inmate state an Eighth Amendment cruel and unusual punishment claim by alleging, in absence of any medical problems, that compelled exposure to secondary tobacco smoke poses an unreasonable risk to his health?)
 
 
 [3]
 Melendez' pleadings and attachments make only cursory reference to the fact that his sinus problem and allergies were aggravated by second-hand smoke. While no doubt uncomfortable, these conditions appear no more than de minimis for Eighth Amendment purposes under whatever standard ultimately prevails. See Clemmons v. Bohannon, 956 F.2d 1523, 1526-27 (10th Cir. 1992) (en banc) (inmate alleging an ETS Eighth Amendment violation must plead the existence of a serious medical condition caused or aggravated by passive smoke); cf. Hudson v. McMillian, 112 S. Ct. at 999 ("absence of serious injury is ... relevant to the Eighth Amendment inquiry" in the excessive-force context, but is not determinative)
 
 
 [4]
 To the extent that Melendez is attempting to enforce the PPD, such relief is unavailable under § 1983 which provides for a cause of action based upon a deprivation of rights, privileges or immunities guaranteed by the Constitution or laws of the United States. The PPD is, at most, a contract, and does not create any substantive "rights, privileges or immunities." To the extent that he seeks to be housed with a particular individual, there is no constitutional right to thecellmate of one's choice. Purvis, 929 F.2d at 825
 
 
 [5]
 By this we do not mean to imply that the accommodations prescribed by the PPD rule out a cognizable ETS claim under Avery, but only that Melendrez has failed to state such a claim here