Bruce LEONARDO, Plaintiff, Appellant,

v.

John MORAN, Defendant, Appellee.

No. 79–1370.

United States Court of Appeals,
First Circuit.

Submitted Nov. 9, 1979.

Decided Dec. 19, 1979.

Bruce Leonardo, on brief, pro se.

Paul L. Foster, Associate Legal Counsel, Dept. of Corrections, Cranston, R. I., on brief, for defendant, appellee.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Appellant is an inmate at the state prison in Cranston, R. I. His pro se complaint alleged that since 1973 he had been in a medium security protective custody status. He was being protected against unnamed inmates in maximum security against whom he had given grand jury testimony. Leonardo claimed that in August 1978 defendant prison officials caused his transfer to maximum security where the "same said

inmates were housed and known to be housed by the Defendant . . . ."

Unidentified "maximum security inmates" allegedly had "daily access to Plaintiff's cell." The complaint further claimed that the ostensible purpose of the transfer was because plaintiff was "awaiting discipline." Plaintiff continued, without elaboration, to allege:

"Such actions by the Defendants were in part a conspiracy to endanger the Plaintiff's life and well-being due in part to the Plaintiff's filing of grievances to U.S. District Court, and in part as a means of using protective custody status as a form of threat and intimidation for absolute and abusive control."[1]

Leonardo further alleged that other facilities were available in medium security where he could have been held in an "awaiting discipline" status. He also alleged that "Defendants' conduct could have been the cause of the Plaintiff's probable death." Damages only—not injunctive relief—were sought.

The district court dismissed the foregoing complaint without prejudice, giving as reasons the following:

"Plaintiff makes no allegation of procedural defects in his reclassification which might give rise to violations of the Morris Rules as they pertain to the classification process. His complaint involves only the substantive decision of the classification board, a matter with which the Court will not interfere."

By leave of this court, Leonardo prosecuted his pro se appeal through the medium of a letter filed on September 25, 1979. In this he states that he was transferred back to medium security after only two days in maximum. He also concedes that he chose to go to maximum security rather than "Administrative protective custody which consists of a daily twenty-three hour a day lock-up . . . ."

■ Appellant evidently sought to establish two claims. The first is that defendants unlawfully interfered with his right of access to the courts by retaliating for an earlier judicially lodged complaint. *See Furtado v. Bishop*, 604 F.2d 80, 88 (1st Cir. 1979). However, Leonardo pleaded no facts to tie his transfer to maximum security to his exercise of his right of access to the courts. Plaintiff omitted such basic facts as the nature of his "grievances" before the district court and whether they were directed at prison officials. *Compare McDonald v. Hall*, 610 F.2d 16 (1st Cir. 1979) (chronology pleaded and judicial notice taken of nature of suits). Nor did the complaint allege that defendants communicated a threat of revenge to Leonardo. *Compare Hudspeth v. Figgins*, 584 F.2d 1345, 1347 (4th Cir. 1978), *cert. denied*, 441 U.S. 913, 99 S.Ct. 2013, 60 L.Ed.2d 386 (1979) (communication of threat pleaded). Finally, Leonardo alleged that his transfer was due "in part" to his having filed grievances with the court. Such ambiguity about defendants' motivation—a crucial element of his case, *see McDonald v. Hall, supra*, at 18–19—together with the other deficiencies discussed *supra* cause this complaint to fall short of even the minimum factual recitations allowed complaints of this nature by *McDonald v. Hall*. In *McDonald*, we reached the outer limits of the policy according a liberal reading to pro se complaints. The present case falls within the ambit of the countervailing policy discounting conclusory allegations. *Fisher v. Flynn*, 598 F.2d 663, 665 (1st Cir. 1979); *Kadar Corp. v. Milbury*, 549 F.2d 230, 233 (1st Cir. 1977); *Koch v. Yunich*, 533 F.2d 80, 85 (2d Cir. 1976).

■ Second, appellant maintained that the transfer was "a form of threat and intimidation for absolute and abusive control." Whether he adequately pleaded a cause of action under this heading is a closer question. Prison officials have a duty under the 8th and 14th amendments to protect prisoners from violence at the hands

---

1. Leonardo also alleged a conspiracy in ¶ 12 of his complaint. This also contained no allegations of supporting facts.

of other prisoners. *Gates v. Collier,* 501 F.2d 1291, 1309 (5th Cir. 1974); *accord, Little v. Walker,* 552 F.2d 193, 197–98 (7th Cir.), *cert. denied,* 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 530 (1977) ("deliberate indifference" to "violent attacks and sexual assaults" is actionable); *McCray v. Sullivan,* 509 F.2d 1332, 1334 (5th Cir.) *cert. denied,* 423 U.S. 859, 96 S.Ct. 114, 46 L.Ed.2d 86 (1975) ("where prison officials have failed to control or separate prisoners . . . who endanger the physical safety of other prisoners, prison officials may be required to take steps to protect the prison population"); *cf. Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976) ("deliberate indifference to serious medical needs" violates the 8th amendment); *see also Owens v. Haas,* 601 F.2d 1242, 1249 (2d Cir. 1979) (citing cases); *Jones v. Diamond,* 594 F.2d 997, 1020, *petition for rehearing en banc granted,* 602 F.2d 1243 (5th Cir. 1979); *Smith v. Sullivan,* 553 F.2d 373, 380 (5th Cir. 1977); *Finney v. Arkansas Board of Corrections,* 505 F.2d 194, 201 (8th Cir. 1974), *aff'd sub nom. Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978); *Woodhaus v. Virginia,* 487 F.2d 889, 890 (4th Cir. 1973).

■ However, the nature of an 8th amendment violation is the "unnecessary and wanton infliction of pain." *Estelle v. Gamble, supra,* 429 U.S. at 103, 97 S.Ct. at 290, *quoting Gregg v. Georgia,* 428 U.S. 153, 173, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (Stewart, J.). Here, Leonardo did not allege that he was physically harmed or assaulted while in maximum security. Nor did he allege actual threats or other circumstances to support a claim of mental suffering. *Cf. Carey v. Piphus,* 435 U.S. 247, 264, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978); *Perez v. Rodriguez Bou,* 575 F.2d 21, 25 (1st Cir. 1978); *Rivera Morales v. Benitez de Rexach,* 541 F.2d 882, 886 (1st Cir. 1976). *Magnett v. Pelletier,* 488 F.2d 33, 35 (1st Cir. 1973). In addition, his letter indicates that

another albeit disagreeable alternative existed—transfer to administrative protective custody. In light of this, we think the allegations concerning confinement in maximum security do not sufficiently plead an 8th amendment violation. This is not to suggest that a recurrence of the transfer here complained of might not require further investigation by the district court, especially were the facts such as to call for injunctive relief.[2] "A prisoner has a right . . . to be reasonably protected from constant threats of violence and sexual assault by his fellow inmates, and he need not wait until he is actually assaulted to obtain relief." *Woodhaus v. Virginia, supra,* 487 F.2d at 890. We merely decide that, any claim for injunctive relief having been mooted by appellant's transfer back to medium security, his two day confinement in maximum security was not actionable on the facts here presented.

*Affirmed.*

2. Under the district court's order of dismissal without prejudice, Leonardo is free to file a new complaint. We therefore need not decide whether the district court erred in not affording notice and an opportunity to amend before dis-

missing the present complaint. *See Preterm, Inc. v. Dukakis,* 591 F.2d 121, 134 (1st Cir.), *cert. denied sub nom. Baird v. Pratt,* 441 U.S. 952, 99 S.Ct. 2181, 60 L.Ed.2d 1057 (1979).