Richard DEWEY, Plaintiff, Appellant,

v.

The UNIVERSITY OF NEW HAMP-
SHIRE, et al., Defendants,
Appellees.

No. 82–1486.

United States Court of Appeals,
First Circuit.

Argued Oct. 8, 1982.

Decided Nov. 26, 1982.

Rehearing Denied Dec. 28, 1982.

Mark S. Gearreald, Exeter, N.H., with whom Shute, Engel & Morse, P.A., Exeter, N.H., was on brief, for plaintiff, appellant.

Joseph A. Millimet, Manchester, N.H., with whom Devine, Millimet, Stahl & Branch, Manchester, N.H., was on brief, for defendants, appellees.

Before COFFIN, Chief Judge, TIM-BERS,* Senior Circuit Judge, and BREY-ER, Circuit Judge.

COFFIN, Chief Judge.

Plaintiff Richard Dewey appeals from the dismissal of his civil rights complaint by the

* Of the Second Circuit, sitting by designation.

United States District Court for the District of New Hampshire. We agree with the district court that Count One of the complaint failed to state a claim upon which relief could be granted and that the remaining counts were time barred.[1]

Plaintiff was, from 1958 to 1978, a tenured professor at the University of New Hampshire. In 1978 he retired, pursuant to a directive invoking a University policy requiring retirement at age 65. After receiving notice of his mandatory retirement, plaintiff sought unsuccessfully to appeal the decision through informal University channels. That failing, on July 29, 1981, he brought suit, under 42 U.S.C. § 1983, against the University and several of its administrators, seeking declaratory and injunctive relief and damages for violation of his rights under the First and Fourteenth Amendments. In Count I of the complaint, plaintiff alleged that the enforcement of the retirement policy in his case was in retaliation for past exercise of his First Amendment rights. Count II alleged that, even if the retirement was based on the University's policy, the decision was a violation of the Equal Protection Clause, because it relied on an age classification not rationally related to a legitimate state interest. Count III asserted the lack of procedural safeguards that should have attended his dismissal. Count IV alleged the deprivation of a liberty interest in the deletion of his name from University publications. Count V alleged a denial of Equal Protection in that other individuals were more favorably treated regarding post-retirement employment. Count VI alleged a denial of Due Process and Equal Protection in connection with plaintiff's salary from 1967 forward.

Defendants moved to dismiss the complaint and/or for summary judgment. After a hearing, the receipt of memoranda of law from the parties and two amendments to plaintiff's complaint, the court dismissed the complaint. It dismissed Counts I and IV for failure to state a claim upon which relief could be granted and Counts II, III, V and VI as time barred.

*Count I*

The pertinent allegations of Count I were that plaintiff, who had taught at the University from 1958, aware that he would turn 65 on November 1, 1977, began in the fall term of 1977 to discuss with his colleagues "their views on ageism"; that "[i]n keeping with the country-wide momentum to abolish age as a job criterion, [he] found widespread support from his retention among the University community" except for defendant Spitz, the Dean of the College of Liberal Arts; that during all of the years of Spitz's deanship, from 1971 to 1980, plaintiff "both publicly and to defendant Spitz in person . . . voiced views on University matters of public concern[2] that were contrary to those of defendant Spitz"; that Spitz issued a decision that plaintiff would have to retire at the end of the 1977–78 academic year because of University policy; that this reason was a mere pretext, concealing that "[a] substantial factor in his decision was plaintiff's past exercise of his right of freedom of speech"; that in the three and one-half years since this decision plaintiff has appealed to the Acting Dean of the College of Liberal Arts, the Vice President for Academic Affairs, the former president of the University, the present President, and the Personnel Committee of the Board of Trustees, all of whom rejected his appeals despite "expressions of support for plaintiff's retention from all sectors of the University community".

There must be added to these allegations the University's retirement policy, contained in the University Faculty Handbook, which the magistrate, without objection, recommended be considered by the court along with the pleadings in ruling on defendants' motion to dismiss the complaint. The Handbook contained the details of the University's retirement policy alluded to in

---

1. The court also decided that Count IV failed to state a claim for relief. Plaintiff does not challenge that decision here.

2. The words "of public concern" were added late in this litigation by amendment on March 12, 1982, after a district court hearing on March 2.

the complaint, namely, that "[u]nder rare and unusual circumstances and at the discretion and on the initiative of the University, employment of a member of the faculty may be extended beyond the retirement age . . . ." The complaint alleged that two other 65 year old professors were retained in the 1977–78 and 1978–79 academic years, plaintiff being the only 65 year old mandatorily retired in those years.

What we have before us, therefore, is a complaint that makes three statements: (1) that plaintiff would likely have met the "rare and unusual" circumstances test because he had widespread support among the University community and two other tenured professors of his age were kept on; (2) that because he had voiced disagreement with defendant Spitz on University matters of public concern from 1971 to 1980, Spitz had made the key decision that the University should not exercise its discretion and determine that plaintiff had met the "rare and unusual" circumstances test; and (3) that top officials of the University backed up the initial decision.

The district court dismissed Count I of the complaint on the ground that it did not state a claim for which relief could be granted. This is a dubious practice in a closed case, particularly one involving a First Amendment claim. Summary judgment allows a broader basis for decision, and a hearing of evidence an even broader basis. Dismissal of a claim requires the most close analysis by an appellate court, balancing the overall liberal thrust of the simplified civil rules on the one hand, *see generally* 5 Wright & Miller, Federal Practice and Procedure, §§ 1216, 1357, against the repeated demands by our and other courts that there be more than conclusory allegations, even in civil rights cases.

Our standard for such a review as this has crystallized over the past few years in a number of cases. We require more than conclusions or subjective characterizations. We have insisted on at least the allegation of a minimal factual setting. It is not enough to allege a general scenario which could be dominated by unpleaded facts,

*O'Brien v. DiGrazia,* 544 F.2d 543, 546 n. 3 (1st Cir.1976); nor merely to allege without specification that defendants used their powers generally with respect to various governmental bodies to plaintiff's prejudice, *Kadar Corp. v. Milbury,* 549 F.2d 230 (1st Cir.1977); nor to allege in general terms termination of a job because of plaintiff's refusal of romantic advances made by a superior, *Fisher v. Flynn,* 598 F.2d 663 (1st Cir.1979); nor to allege simply that plaintiff suffered an adverse prison decision because he had filed a complaint on unspecified matters in court, *Leonardo v. Moran,* 611 F.2d 397 (1st Cir.1979); nor, finally, to allege that one's constitutional rights had been violated by some undescribed surveillance, *Glaros v. Perse,* 628 F.2d 679 (1st Cir.1980).

■ We recognize the great utility of 42 U.S.C. § 1983 as an instrument of justice in the hands of the weak against the mighty, but we also are aware of the impact of its misuse. Therefore, although we must ask whether the "claim" put forward in the complaint is capable of being supported by any conceivable set of facts, we insist that the claim at least set forth minimal facts, not subjective characterizations, as to who did what to whom and why. In so requiring, we are not alone. At least four other circuits keep us company: *United States v. City of Philadelphia,* 644 F.2d 187 (3d Cir. 1980); *Cohen v. Illinois Institute of Technology,* 581 F.2d 658 (7th Cir.1978); *Anderson v. Sixth Judicial District Court,* 521 F.2d 420 (8th Cir.1975); *Albany Welfare Rights Organization Day Care Center, Inc. v. Schreck,* 463 F.2d 620 (2d Cir.1972).

■ In the instant case the complaint alleges that plaintiff, over a period of six years prior to the critical decision in the fall of 1977, spoke on a number of issues of public interest involving the University, disagreeing with defendant Spitz. Despite the fact that nearly eight months elapsed from the filing of the complaint (July 29, 1981) to the filing of a second motion to amend it (March 12, 1982), during which time the lack of specificity in the complaint had been vigorously challenged, there was no effort

to fill in the gaps as to the nature of the issues discussed, the particular occasions, their recentness or remoteness, the position of the University, the importance of the controversy, the prominence or lack of prominence of plaintiff's comments. Instead, the allegations described what we assume would be true of any thinking and reasonably articulate faculty member during the decade of the seventies.

If such a skeletal set of bland allegations were held to state a cause of action, any employee could put a defendant to its proof or at least force it to affidavits simply by saying: "Over the past ten years my immediate superior and I have talked about various issues of public interest concerning the company (college, agency, store). Occasionally I disagreed with him. This is why I wasn't kept on the payroll." Such a conclusory charge of retaliation for wholly unidentified talk would be a cheap way of invoking the elaborate apparatus of a trial, despite the most formidable justification proffered by an employer.

This case is an example. Not only is it apparent that two presidents, a vice president, a dean, and the personnel committee of the Board of Trustees, as to none of whom is there an allegation of a controversy with plaintiff, consistently adhered to the decision not to extend to plaintiff post-65 employment, but there is the conceded policy of the University, set forth in the Handbook, that only in "rare and unusual circumstances" and at the discretion of the University, would employment be continued for a faculty member who had reached 65.

Perhaps it is not plaintiff's burden to allege facts that indicate that he would be a likely object for the exercise of such rarefied discretion. In *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), the school authorities had full discretion to renew each year's contract or not. Plaintiff's claim was not barred by the fact that he had no "right" to continued employment. Similarly, plaintiff here does not have the burden of alleging that he had a right to continued employment or even facts showing a high probability that he

would have been found clearly to have met the "rare and unusual circumstances" standard. *See Mt. Healthy City Board of Education v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1976) (burden on the employer to demonstrate that it would have reached the same decision even in the absence of the protected conduct).

Nevertheless, the Handbook policy is not entirely without significance on the issue of the propriety of the dismissal of Count I. If plaintiff's complaint were that he had held a position for a period of years and that, following some expressed disagreement on an issue of public concern with his employer, he had been discharged, a court might, in the absence of other background, deem the complaint sufficient. *But see Leonardo v. Moran, supra* 611 F.2d at 397. This complaint, however, does not present an adverse action coming out of the blue, explained only by the prior disagreement on a matter of public concern. It presents an action in line with a clearly articulated standard, by its explicit terms difficult to meet. In such a case we are not disposed to retreat from the criterion of minimal factual allegations that we have consistently required. This case, while posing a close issue on a motion to dismiss, falls just outside our holding in *McDonald v. Hall,* 610 F.2d 16 (1st Cir.1979), where, in a split opinion, we held that a complaint alleging a retaliatory prisoner transfer stated a claim—where the nature of plaintiff's conduct (giving legal assistance to other prisoners) was clear and the "chronology of events . . . [provided] some support for an inference of retaliation." *Id.* at 18.

We therefore hold that the district court did not err in dismissing Count I for failure to state a claim.

### Counts II, III, V and VI

The trial court dismissed Counts II, III, V and VI of plaintiff's claim as time barred. In adherence to the "well established practice of looking to the state statute 'most analogous' to the particular civil rights cause of action alleged in the complaint", *see Burns v. Sullivan,* 619 F.2d 99, 105 (1st Cir.1980), the court determined that the

most analogous state statute was the New Hampshire "Law Against Discrimination", N.H. RSA 354–A, which included a provision against age discrimination and which provided 90 days for aggrieved persons to file complaints of unlawful discriminatory practices and six months for the attorney general to file such a complaint. Under either the 90 day or the 6 month time limit, the court decided, plaintiff's claims in Counts II, III, V and VI were too late. Plaintiff filed his complaint on July 29, 1981, three years after he was retired from the University and more than three and a half years after he received notice that he would be forced to retire.

On appeal, plaintiff urges several grounds for reversal of that decision. First, plaintiff argues that Counts III, V and VI did not raise age discrimination claims and therefore that the statute of limitations under the New Hampshire "Law Against Discrimination" should not have been applied. Instead, the appropriate statute of limitations should have been the 6 year statute applicable to claims sounding in tort. Next, plaintiff argues that the 90 day or 6 month limit was improperly applied to Count II, because, unlike the plaintiff in *Burns,* he had no available administrative remedy. Plaintiff's third ground for reversal is that, even assuming the applicability of N.H. RSA 354–A to Counts II, III, V and VI, the defendants should be estopped from asserting the time bar by their tactics of evasion, which prevented the plaintiff from filing his claim. Finally, plaintiff argues that Count V should not be dismissed as time barred because it alleged a continuing violation.

■ It is unnecessary for us to address all of plaintiff's arguments to determine that Counts II, III, V and VI were properly dismissed. As plaintiff admits in his brief, "the equal protection claim set forth in Count III is dependent as to its viability upon Count I", since it requires the court to find that age was irrelevant to the University's decision and therefore that plaintiff

was similarly situated to a dismissed tenured faculty member under the age of 65. Having determined that the facts alleged in Count I are insufficient to state a claim for relief, we are forced to the same conclusion regarding Count III.

■ Count V fails for the same reason that we affirmed the dismissal of Count I. The allegation that others on the faculty who have reached the age of 65 within the last few years have been treated more favorably with respect to opportunities for extended employment and employment after retirement is simply too conclusory to state a claim that plaintiff was denied the equal protection of the laws. Plaintiff failed to mention who the similarly situated individuals were, what their qualifications were, what opportunities they were given, what opportunities he was denied or how he was qualified to take advantage of those opportunities.

■ Count II attacked the University's retirement policy as unconstitutional. On that Count, there is little dispute that the New Hampshire "Law Against Discrimination" is the most analogous state statute and that under either that statute's 90 day or its 6 month limit the complaint was filed too late. The fact that plaintiff had no available administrative remedy does not render the state statute inapplicable. *See Holden v. Commission Against Discrimination,* 671 F.2d 30, 33 (1st Cir.1982). Nor are defendants estopped from asserting the time bar. There is no evidence that plaintiff was induced not to file his suit and the fact that the University entertained his grievance does not toll the running of the limitations period. *Delaware State College v. Ricks,* 449 U.S. 250, 261, 101 S.Ct. 498, 505, 66 L.Ed.2d 431 (1980).

■ Finally, Count VI was too late under even the New Hampshire general six year statute of limitations. The allegations are based on events in 1967–68 and 1971–72. The assertion that the effect of those events continued[3] through 1977–78 cannot

---

**3.** Plaintiff does not urge that Count VI alleges a continuing violation. His complaint recites individual yearly deprivations of his fair salary. He further alleges, however, that each of those

remedy the fact that the complaint was filed too late.[4]  *See Goldman v. Sears, Roebuck & Co.* 607 F.2d 1014, 1018 (1st Cir. 1979).

*The judgment of the district court is affirmed.*

yearly deprivations was the direct result of the biased recommendations of Professors Palmer and Straus for the years 1967–68 and 1971–72.

**4.**  The only allegation in Count VI that could survive a dismissal for untimeliness under any statute of limitations is that in paragraph 62, which alleges that as a result of defendant Spitz's prejudices against him, during his last academic year his salary was lowered even further than what it would otherwise have been.  Plaintiff's claim that this treatment denied him equal protection is, for the reasons noted regarding Count V, too conclusory to state a claim for relief.  His due process claim fails because he can point to no property interest in a specific level of salary increase.