974 F.2d 1329
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Isaac AYCOX, Plaintiff, Appellant,
v.
BROOKE HOUSE, INC., et al., Defendants, Appellees.
 No. 92-1307.
 United States Court of Appeals,
First Circuit.
 Aug. 26, 1992
 
 Isaac Aycox on brief pro se.
 Howard A. Brick, Cynthia O. Hamilton, Donald K. Stern, Daniel P. Tighe, and Hale and Dorr, on Memorandum in Support of Motion for Summary Disposition, for appellees.
 Before Breyer, Chief Judge, Campbell, Senior Circuit Judge, and Cyr, Circuit Judge.
 Per Curiam.
 
 
 1
 Pro se inmate Isaac Aycox appeals from a district court judgment dismissing his 42 U.S.C. § 1983 complaint against Brooke House, a Massachusetts halfway house, and its director, Andy McDonald. The district court ruled that the complaint failed to state a claim upon which relief could be granted and simultaneously denied the plaintiff's motion for summary judgment. We affirm.
 
 I.
 
 2
 We recite only those facts relevant to the issues on appeal. In 1976, plaintiff was convicted of armed robbery and sentenced to ten to twenty years' imprisonment. He was transferred to Brooke House in September 1988. Plaintiff alleged that he was deceived into signing a "Community Release Agreement" in connection with this transfer. On October 2, 1988, while "on furlough" from Brooke House, plaintiff went to visit his fiancee in Springfield, Massachusetts and found her with another man. An altercation ensued. Plaintiff was arrested and arraigned in Springfield district court on the following day. He was then taken to the Massachusetts Correction Institute (M.C.I.) at Cedar Junction, a maximum security prison. On or about October 6, 1988, plaintiff received disciplinary reports from Brooke House which charged him with violating " 'prison institutional and disciplinary rules and regulations' " as a result of his conduct in Springfield on October 2-3, 1988. Plaintiff alleges that these reports fraudulently identified Brooke House as one of the DOC's "Contact Pre-release Programs." Plaintiff claimed that Brooke House had no authority to issue disciplinary reports against him and, as a result of these reports, plaintiff's "rights to parole release" have been adversely affected. Plaintiff sought compensatory and punitive damages, as well as declaratory and injunctive relief.[1]
 
 
 3
 On August 23, 1989, Brooke House and McDonald moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6). They argued that the complaint failed to state a claim because Massachusetts law authorized Brooke House to issue disciplinary reports and because the complaint wholly failed to allege any facts with respect to McDonald.
 
 
 4
 Plaintiff did not oppose this motion. On January 23, 1990, plaintiff appeared for a scheduling conference before a magistrate judge (magistrate), who set October 31, 1990 as a discovery deadline. After plaintiff filed interrogatories and a request for protection of documents, the defendants moved to stay all discovery and requested an expedited ruling on their motion to dismiss. Plaintiff opposed this motion by filing a "Motion to Set Aside Motion for Stay." Without alleging any facts, this motion argued that McDonald should not be dismissed for the same reason that the other individual defendants were dismissed. On November 11, 1990, plaintiff filed a motion for summary judgment and a supporting affidavit. The latter averred that "the Commonwealth subjected me to lost (sic) of liberty and freedom in violation of due process of law." In contrast to the allegations in his complaint, the plaintiff's affidavit claimed that he was not "on furlough" on October 2, 1988, but rather, that he was free on a "24 hour pass." Plaintiff complained that because Brooke House reported that he was "on furlough" on October 2, 1988, the DOC confiscated all of his good time credits and plaintiff was prosecuted as a habitual offender for the events of October 2-3, 1988. As a result, he is now serving a mandatory ten-year sentence.
 
 
 5
 On July 2, 1991, the district court referred the motion to dismiss, the motion for summary judgment, and all discovery-related motions to the magistrate for a report and recommendation.[2] On July 18, 1991, the magistrate issued a report which recommended that the defendants' motion to dismiss be allowed because the complaint failed to indicate that Brooke House deprived plaintiff of liberty without due process and further failed to allege any facts regarding McDonald. Plaintiff filed timely objections to the magistrate's report which reiterated that Brooke House did not have legal authority to issue disciplinary reports and that Brooke House caused plaintiff to forfeit all his good time credits by holding themselves out as a correctional facility. Plaintiff further objected on the ground that he never received a copy of the defendants' motion to dismiss. The district court adopted the magistrate's report. On October 29, 1991, the court allowed the defendants' motion to dismiss and denied plaintiff's motion for summary judgment. Plaintiff filed a timely notice of appeal.
 
 II.
 
 6
 On appeal, plaintiff argues that the district court erred in denying his motion for summary judgment because the defendants falsely represented that Brooke House had authority to issue disciplinary reports under M.G.L. c.127, § 49. Plaintiff also argues that the court should not have allowed the defendants' motion to dismiss because he never received a copy of it. We reject both contentions.
 
 
 7
 Plaintiffs' challenge to Brooke House's authority to issue disciplinary reports is specious. In Lanier v. Fair, 876 F.2d 243, 244-45 (1st Cir. 1989), this court recognized this very facility as a "minimum security halfway house ... that operate[s] under the auspices of Massachusetts Halfway House, Inc. and the Department of Correction (DOC)." Plaintiff acknowledged that he signed a community release agreement upon entering Brooke House. We take notice that when plaintiff entered Brooke House in 1988, such agreements typically provided that "Community Release Programs are an extension of the confines of the institution" and inmates like the plaintiff agreed that "all [DOC] rules and regulations will be in effect throughout my community release time." See 103 C.M.R. § 465.21, Exhibit C (effective March 20, 1987). Massachusetts G.L. c.127, § 49 further provides that an inmate who participates in educational, training and employment programs outside correctional facilities "shall remain subject to the rules and regulations of the correctional facility.... " It is beyond peradventure that plaintiff remained subject to the DOC's rules while he resided at Brooke House and that Brooke House therefore had authority to issue disciplinary reports charging him with violations of these rules. Plaintiff's challenge to Brooke House's authority to initiate disciplinary proceedings against him fails to state a viable claim for relief.[3]
 
 
 8
 To be sure, we have recognized that inmates such as Lanier have a liberty interest in remaining at Brooke House that is protected under the Fourteenth Amendment. Such inmates may not be returned to higher custody absent due process. See 876 F.2d at 246-250. But the instant complaint does not allege sufficient facts to suggest that plaintiff did not receive due process. Rather, from all that appears in the complaint, plaintiff received notice of the charges against him when he received the disciplinary reports from Brooke House on October 6, 1988. Apart from the general allegation that plaintiff's parole was "adversely affected," what followed is unpled and, therefore, unknown. "It is not enough to allege a general scenario which could be dominated by unpleaded facts.... " Dewey v. University of New Hampshire, 694 F.2d 1, 3 (1st Cir. 1982). Even a pro se prisoner's complaint must set forth "minimal facts ... as to who did what to whom and why." Id. The instant complaint raised only a baseless technical challenge to Brooke House's authority to issue disciplinary reports. It did not allege any facts showing that the events surrounding plaintiff's return to higher custody and prosecution violated plaintiff's constitutional rights. Dismissal of the complaint against both Brooke House and McDonald for failure to state a claim was therefore proper.[4]
 
 
 9
 We further reject plaintiff's unsworn claim that this dismissal was not fair because he never received a copy of the defendants' motion to dismiss. Plaintiff's brief indicates that he learned that the motion had been filed at least as early as the January 23, 1990 scheduling conference. During the twenty-two months that elapsed between this conference and the dismissal of the complaint, plaintiff filed several documents with the court which indicated that he had knowledge of the substance of the defendants' motion. For example, plaintiff's opposition to the defendants' motion to stay discovery effectively argued that McDonald should not be dismissed because the complaint failed to set forth any facts against him. If plaintiff did not have a copy of the motion itself, he should have raised this before the magistrate issued her recommendation. Moreover, the magistrate's report afforded plaintiff sufficient notice of the shortcomings in his complaint. His failure to come forward with additional facts supporting his claims in response to the magistrate's report persuades us that dismissal remained proper even if plaintiff did not receive the motion to dismiss. See Purvis v. Ponte, 929 F.2d 822, 826-27 (1st Cir. 1991) (affirming dismissal for failure to state a claim where magistrate's report notified plaintiff of complaint's deficiencies).
 
 
 10
 Judgment affirmed.
 
 
 
 [1]
 The complaint also named three "program pre-release officers" as defendants (i.e., Bernard Menendez, Karen Posnick, and Douglas Davis), but it failed to allege any facts as to how these defendants deprived plaintiff of any federal rights. The district court allowed motions to dismiss on behalf of these defendants on August 11, 1989. Plaintiff does not attack this ruling on appeal
 
 
 [2]
 Plaintiff filed an "Objection to the Wording" of the order referring the aforementioned motions to the magistrate which argued that the motion to dismiss should not be allowed since the defendants had not produced documents nor opposed plaintiff's motion for summary judgment
 
 
 [3]
 On appeal, plaintiff argues that his allegations against Brooke House should be read to include its director, Andy McDonald. Even if we do so, the complaint still falls short. As the allegations against Brooke House are specious, they remain specious even when read against McDonald
 
 
 [4]
 Similarly, while inmates may have a protected liberty interest in their reserve parole dates under Massachusetts law, see Lanier, 876 F.2d at 253, as well as a protected interest in good time credits, see Nelson v. Commissioner of Correction, 390 Mass. 379, 388-89 (1983), neither the complaint nor plaintiff's summary judgment filings describe any conduct by Brooke House or McDonald which suggests that these defendants violated plaintiff's right to due process by instituting disciplinary proceedings that resulted in the loss of theserights