USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 98-1248

 REBECCA JUDGE,

 Plaintiff, Appellant,

 v.

 CITY OF LOWELL, ET AL.,

 Defendants, Appellees.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Joseph L. Tauro, U.S. District Judge]

 Before

 Torruella, Chief Judge,
 
 Campbell, Senior Circuit Judge,
 
 and Stahl, Circuit Judge.
 

 David J. Fine, with whom Dangel, Donlan and Fine was on brief
for appellant.
 Thomas E. Sweeney, City Solicitor, for appellee City of
Lowell.
 Neil Sheering, with whom Michelle A. Kaczynski, Assistant
Attorney General and Scott Harshbarger, Attorney General, were on
brief for appellee Gerald Feigin, M.D.
 Joseph G. Donnellan for appellees Daniel R. Brady, Barry
Chevalier and Lewis Hunter.
 Austin M. Joyce, with whom Michael J. Akerson and Reardon &
Reardon were on brief for appellees William M. Taylor and William
F. Busby.
 

November 18, 1998

 
 

 CAMPBELL, Senior Circuit Judge. Rebecca Judge brought
this action pursuant to 42 U.S.C. 1983 against the City of
Lowell, Officers John J. Sheehan, Daniel R. Brady, William M.
Taylor, William F. Busby, Lewis Hunter, Barry Chevalier, David
Tousignant, and Garrett Sheehan of the Lowell Police Department (in
their individual capacities), and Medical Examiner Gerald Feigin,
M.D. (in his individual capacity), for alleged violations of the
Equal Protection Clause of the Fourteenth Amendment to the United
States Constitution. Judge also brought claims under state law
against Dr. Feigin and Officer Chevalier for intentional infliction
of emotional distress. Defendants moved to dismiss the section
1983 claims in Judge's Third Amended Complaint pursuant to Fed. R.
Civ. P. 12(b)(6) for failure to set forth a claim for relief. The
court granted defendants' motions to dismiss the section 1983
claims and declined to exercise supplemental jurisdiction over the
remaining state law claims. Judge appeals from the order granting
defendants' motions to dismiss. We affirm. 
 I. BACKGROUND 
 We summarize the facts and allegations set forth in the
Third Amended Complaint. Judge, who is black, is the sister of
Gary Weems, who died on November 6, 1993. Weems was also black. 
On the date of Weems's death, both Judge and Weems resided at 7
Walter Terrace in Somerville, Massachusetts. Weems married Denise
Richardson Weems in 1980, but they had been separated for several
years at the time of Weems's death. 
 The Lowell Police Department discovered Weems's body on
or about November 6, 1993. At that time, Weems had on his person
various forms of identification that indicated that he lived at 7
Walter Terrace. He also had a bank passbook indicating that he and
Judge jointly held a savings account. Notwithstanding the
discovery of these items, the Lowell Police Department did not
contact Judge or any other member of Weems's family to inform them
of Weems's death. As a result, Judge did not learn of her
brother's death until approximately six weeks after it occurred. 
In the interim, Weems was buried in Lowell as an "unknown person."
 After the Lowell Police Department discovered Weems's
body, it conducted a homicide investigation. Police officers took
witness statements from three individuals. Those statements
indicated that Weems may have died as a result of an injection of
narcotics administered by another person. In their statements, the
witnesses contradicted one another as to the identity of the person
or persons who administered the injection. The witnesses also
indicated that (1) Weems had received over $90 in cash around 4:00
p.m. on November 5, 1993, but had no cash on his person when his
body was discovered the next day, and (2) at some point during the
night of November 5, 1993, Weems's pockets were turned inside out. 
Notwithstanding this evidence, the officers did not investigate
Weems's death further. The officers did not interview additional
persons who may have been present at the time of Weems's death. 
They did not seek out and interview any of Weems's family members. 
 Judge learned of Weems's death sometime in December,
1993. Shortly after learning that Weems had died, Judge, along
with Denise Weems and Jestina Richardson, Denise Weems's mother
(both of whom are also black), went to the office of Gerald Feigin,
the Medical Examiner who had performed an autopsy on Weems's body. 
Initially, Dr. Feigin resisted meeting with the women. After Dr.
Feigin agreed to meet with them, Judge asked Feigin to show the
women something to demonstrate that the body that had been buried
approximately six weeks earlier was that of Gary Weems. Dr. Feigin
"reacted angrily and shoved a photograph of the dead man so far
into Ms. Judge's face that she could not see it." (Third Amended
Complaint, 22.) When Judge requested further information
concerning the circumstances of Weems's death, Dr. Feigin "started
yelling at the three women that he had showed [sic] them the
photograph, that the photograph should be good enough for them and
that he did not have time 'for this.'" See id. 
 Judge alleges on information and belief that at the time
Dr. Feigin prepared his autopsy report concerning Weems, he was
aware of the "suspicious circumstances" discovered by the police,
yet failed to include this information in his report. Dr. Feigin
did not make any recommendation to the district attorney's office
that Weems's death be further investigated. 
 Judge, Denise Weems and Ms. Richardson also visited the
Lowell Police Department. The women spoke to an officer, believed
to be Officer Chavalier, who, during their conversation, used the
street names of certain drugs. When Judge indicated that she did
not understand what the officer was referring to, "the officer
responded in a manner which insinuated that because she was Black,
she must know what he was referring to, and her claim that she did
not know was disingenuous." When Judge asked the officer whether
the police had found any forms of identification on Weems's person,
the officer replied that they had not. When Judge asked for the
return of Weems's personal belongings, the officer stated that the
only item found on Weems's person was a knife. In response to
questions concerning the circumstances of Weems's death, the
officer "provided misleading and incomplete information." 
 In her Third Amended Complaint, Judge asserted four
claims for relief. In Count I, brought pursuant to 42 U.S.C. 
 1983, she alleged that the officer defendants and Dr. Feigin
violated the Equal Protection Clause of the Fourteenth Amendment. 
Judge alleged that Dr. Feigin and the officer defendants "violated
their constitutional duty by discriminating against Rebecca Judge
on the basis of her race and the race of her deceased brother Gary
Weems and his wife Denise Weems," in that they failed to: (1)
notify Weems's wife and next of kin of Weems's death; (2) deliver
in a timely fashion to Weems's wife and next of kin Weems's
personal belongings; (3) carefully inquire into the cause and
circumstances of Gary Weems's death; (4) respect the right of Gary
Weems's wife and next of kin to dispose of his body as they wished;
(5) respond truthfully to requests for information regarding Gary
Weems's death made by members of Gary Weems's family;
(6)investigate the circumstances of Gary Weems's death with due
regard to the possibility that the death may have resulted from
criminal acts; (7) pursue carefully evidence of suspicious
circumstances regarding Gary Weems's death; and (8) notify the
district attorney's office of evidence warranting the attention of
that office. 
 Judge alleged "on information and belief" that the above
conduct "would not have been characterized by the gross
deficiencies with which it was characterized had [she], her
deceased brother Gary Weems and his wife Denise Weems been White,
instead of Black." Judge further alleged that these circumstances 
 were part and parcel of a pattern and
 practice, pursuant to which one level
 of care is used by defendants in the
 investigation of the deaths of White
 persons, and another, inferior level of
 care is used by defendants in the
 investigation of the death of Black
 persons, particularly if the Black
 persons in question are ostensibly of a
 low economic class and the cause of
 death is ostensibly a drug overdose. 

Id., 33. As support for this "pattern and practice" allegation,
Judge cited the case of Kasha Blount, a black woman from Dorcester,
Massachusetts, who died in February 1990 under allegedly suspicious
circumstances. According to newspaper articles appended to the
Third Amended Complaint, a man was tried in the Blount case on
homicide charges, but was acquitted by a jury. The articles
indicate that Dr. Feigin was the medical examiner in the Blount
case. Relying upon statements made by Blount's mother to the
press, Judge alleges that Dr. Feigin failed to properly investigate
Ms. Blount's death because she was black.
 In Count II, Judge alleged that the City of Lowell had
exhibited "deliberate indifference" by failing to "establish a
custom and policy that prohibited discrimination on the basis of
race in the discharge of the legal obligations at issue," and by
failing to recruit and train its police officers "in such a way as
to ensure that they would not discriminate on the basis of race in
the discharge of the legal obligations at issue." In Counts III
and IV, Judge alleged state law claims for intentional infliction
of emotional distress against Dr. Feigin and Officer Chevalier.
 After Judge filed her initial complaint, she amended it
three times. The defendants filed motions to dismiss the Second
Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure
to state a claim for relief under section 1983. At a scheduling
conference held after those motions were filed, the court expressed
skepticism that the Second Amended Complaint set forth sufficient
factual support for Judge's allegation of racial animus. 
Nevertheless, the court denied the motions to dismiss without
prejudice to their being renewed at a later date. Judge filed a
Third Amended Complaint, in which she elaborated on the specific
alleged omissions of the defendant officers and Dr. Feigin, and
cited the Blount case. The defendants renewed their motions to
dismiss for failure to state a claim, and the court granted the 
motions. The court denied Judge's motion to reconsider and her
motion for leave to file a Fourth Amended Complaint. Having
dismissed the federal claims set forth in Counts I and II, the
court declined to exercise supplemental jurisdiction over the two
remaining state law causes of action (Counts III and IV) and
dismissed them as well. 
 II. DISCUSSION 
 Judge argues on appeal that the district court erred in
dismissing her Third Amended Complaint. We conclude that the
district court properly dismissed Counts I and II of Judge's Third
Amended Complaint and, having done so, properly dismissed the
remaining state law claims. Judge also challenges the denial of
her motion for leave to file a Fourth Amended Complaint. We
conclude that the court did not abuse its discretion in denying
that motion. 
A. Dismissal of the Third Amended Complaint
 We review the disposition of a motion to dismiss de novo. 
See LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 509 (1st
Cir. 1998). Rule 8(a) provides that the complaint must contain "a
short and plain statement of the claim showing that the pleader is
entitled to relief." Fed. R. Civ. P. 8(a). In an oft-quoted 
gloss, the Supreme Court stated over forty years ago that a
complaint should not be dismissed for failure to state a claim
"unless it appears beyond doubt that the plaintiff can prove no set
of facts in support of his claim which would entitle him to
relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). 
 Notwithstanding Conley, this circuit and others have held
that in civil rights cases such as the present, a bare conclusory
allegation of the critical element of illegal intent, including of
an intent to discriminate, is insufficient. We have required the
plaintiff "to allege particulars sufficient to sanction a
factfinder in drawing a reasonable inference of intentional
disparate treatment based on race." The Dartmouth Review v.
Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989). Put another
way, the element of illegal motive must be pleaded by alleging 
specific non-conclusory facts from which such a motive may
reasonably be inferred, not merely by generalized asseveration
alone. See Correa-Martinez v. Arillaga-Belendez, 903 F.2d 49, 51
(1st Cir. 1990) (requiring that alleged facts in complaint
"specifically identify the particular instance(s) of discriminatory
treatment and, as a logical exercise, adequately support the thesis
that the discrimination was unlawful").
 The above-mentioned cases in this circuit predate the
Supreme Court's decision in Leatherman v. Tarrant County Narcotics
Intelligence and Coordination Unit, 507 U.S. 163 (1993), as well as
the Court's very recent decision in Crawford-El v. Britton, 118 S.
Ct. 1584 (1998). As the district court relied upon the earlier
First Circuit caselaw in determining that the Third Amended
Complaint was legally inadequate, we must decide whether the
requirement stated in those cases survives Leatherman and Crawford-
El. Based particularly on the Court's dicta in Crawford-El, infra, 
we believe that it does, at least in a case like the present
alleging a constitutional violation calling for proof of an illegal
motive. We also believe, contrary to Judge's contentions, that the
district court did not err in its manner of applying our precedents
to the Third Amended Complaint.
 Were Leatherman the Supreme Court's last and only word,
we would be less certain of the correctness of our refusal, in
circumstances like the present, to accept purely conclusory
pleading on the element of discriminatory intent. In Leatherman,
the Court rejected a heightened pleading standard imposed by the
Fifth Circuit in cases alleging municipal liability under section
1983. The case arose out of complaints filed against two
municipalities for their officers' forcible entry into residences
the officers suspected were fronts for drug-manufacturing
operations. The district court and the Fifth Circuit, both
applying the latter's heightened pleading standard in civil rights
cases, held that the complaints should be dismissed. The Supreme
Court reversed.
 The Court found it "impossible to square the 'heightened
pleading standard' applied by the Fifth Circuit . . . with the
liberal system of 'notice pleading' set up by the Federal Rules." 
Leatherman, 507 U.S. at 168. The defendants in Leatherman argued
that a heightened pleading requirement was necessary because "a
more relaxed pleading requirement would subject municipalities to
expensive and time consuming discovery in every 1983 case,
eviscerating their immunity from suit and disrupting municipal
functions." Id. The Supreme Court observed, however, that "unlike
various government officials, municipalities do not enjoy immunity
from suit either absolute or qualified," id., suggesting the
result might be different in individual capacity actions against
government officials. The Court specifically reserved judgment on
the question whether its "qualified immunity jurisprudence would
require a heightened pleading in cases involving individual
government officials." Id. 
 Judge argues that in Crawford-El, the Court answered
that question in the negative. We are not so sure, but, in any
case, immunity was not (as the Supreme Court pointed out) the key
issue there, any more than it was here. In Crawford-El, the
Supreme Court rejected the D.C. Circuit's requirement that a
plaintiff bringing a claim under section 1983 against a government
official in his or her individual capacity, regarding which the
official's improper motive is a necessary element, adduce "clear
and convincing evidence" of such motive in order to defeat a motion
for summary judgment. 118 S. Ct. at 1595. The Court of Appeals
had adopted this heightened evidentiary requirement to protect
government officials, in a doubtful case, from the burdens of
discovery and trial. The Supreme Court held that the D.C. Circuit
went too far in increasing the plaintiff's evidentiary burden. 
The Court continued, however, with strong dicta dealing squarely
with the issue now before us. Indicating awareness and some
sympathy with "the potential problem that troubled the court," the
Supreme Court said that it was "therefore appropriate to add a few
words on some of the existing procedures available to federal trial
judges in handling claims that involve examination of an official's
state of mind." Id. at 1596. The Court stated that
 [w]hen a plaintiff files a complaint against a
 public official alleging a claim that requires
 proof of wrongful motive, the trial court must
 exercise its discretion in a way that protects
 the substance of the qualified immunity
 defense. It must exercise its discretion so
 that officials are not subjected to
 unnecessary and burdensome discovery or trial
 proceedings. 

Id. 
 One way of accomplishing this, the Court went on, was for 
trial courts, prior to permitting any discovery, to use existing
procedures, such as ordering a plaintiff to reply to a defendant's
answer or granting defendant's motion for a more definite
statement, to require that plaintiffs allege specific facts
supporting an allegation of wrongful motive. Id. at 1596. The
Supreme Court then stated, in unequivocal language directly
relevant to the issue under consideration, that "the [trial] court
may insist that the plaintiff 'put forward specific, nonconclusory
factual allegations' that establish improper motive causing
cognizable injury in order to survive a prediscovery motion for
dismissal or summary judgment." Id. (quoting in part Siegert v.
Gilley, 500 U.S. 226, 236 (1991) (Kennedy, J., concurring in
judgment)). "This option exists," the Court went on to state,
"even if the official chooses not to plead the affirmative defense
of qualified immunity." Id. at 1597. 
 Judge's Count I section 1983 claim rests upon 
allegations of unconstitutional motive (i.e., intent to
discriminate because of race) on the part of several defendants
sued in their individual capacities. See infra. In Crawford-El,
the Supreme Court recognized that claims against individual public
officials have the potential to subject them to burdensome
discovery and trials and stated that district judges may dispose of
such claims prior to permitting any discovery where a plaintiff,
having been provided the opportunity to do so, fails to allege
"specific, nonconclusory factual allegations that establish 
improper motive." 118 S. Ct at 1596 (emphasis provided). We
conclude, therefore, that the five Justices writing for the Court
in Crawford-El permitted an approach similar to ours in Dartmouth
Review and Correa-Martinez, calling for the pleading of specific
facts from which to infer illegal motive although the Court
limited its carefully-phrased endorsement of that approach to
constitutional claims in which "improper motive" was an essential
element for plaintiff to prove. See Crawford-El, 118 S. Ct. at
1596. As Count I here precisely involves an action under section
1983 against state officials in their individual capacities
requiring plaintiff to prove improper motive, see infra, we regard
the majority's carefully-fashioned dicta in Crawford-El as allowing
the continued use here of the standard reflected in this circuit's
previous caselaw and applied below. 
 We therefore examine Count I of Judge's Third Amended
Complaint to determine whether it meets the standard permitted in
Crawford-El ("specific, nonconclusory factual allegations that
establish that defendant acted based upon an improper motive"), a
standard, as we say, similar to that articulated by this circuit in
Dartmouth Review and progeny. In so applying that standard, we
bear in mind that, in Count I, Judge alleged that the federal right
she was denied was the right to equal protection of the laws under
the Fourteenth Amendment. One who asserts that governmental action
violates the Equal Protection Clause must show that he or she is
"the victim of intentional discrimination." Texas Dept. of
Community Affairs v. Burdine, 450 U.S. 248, 256 (1981); see also 
Washington v. Davis, 426 U.S. 229, 239 (1976) ("The central purpose
of the Equal Protection Clause of the Fourteenth Amendment is the
prevention of official conduct discriminating on the basis of
race."). In order to state a claim under the Equal Protection
Clause, a plaintiff must allege not only that the defendants were
aware of her race at the time of their actions, but also that
defendants acted because of her race. See Personnel Administratorv. Feeney, 442 U.S. 256, 279 (1979). "Improper motive" is,
therefore, a key element of proof in the instant case, entitling
the district court to demand, as already said, that such motive be
pleaded not just conclusorily but by specific, nonconclusoryfactual allegations giving rise to a reasonable inference of
racially discriminatory intent. See Dartmouth Review, 889 F.2d at
16. 
 Judge alleges in Count I that the defendants failed to
carry out various duties in connection with the discovery of
Weems's body and the investigation of Weems's death. First, Judge
alleges that the defendants failed to notify her of Weems's death
in a timely manner, which caused her brother to be buried as an
"unknown person."While the defendants each moved to dismiss the complaint
for lack of standing based upon the absence of any right under
state law for Judge to possess Weems's body, counsel for Judge
made clear during oral argument on the motions to dismiss that
Judge's claims were not grounded upon any such interest:
 
 Court: But the whole theory of your case is that
 the plaintiff was not, or members of the family,
 were not told of the deceased passing, and he was
 buried. Isn't that the gravamen of the case?

 Mr. Fine (Counsel for Judge): No. 

 Second, Judge alleges that the government
officials the officer defendants and Dr. Feigin failed,
respectively, to conduct an adequate homicide investigation and
prepare a proper autopsy report, despite the existence of
"suspicious circumstances." Third, Judge alleges that defendants
were rude to her when she sought information concerning Weems's
death. Judge alleges that all of these omissions occurred because
she is black. In sum, Judge alleges a double standard whereby
deaths of black persons that occur under suspicious circumstances
are treated differently (i.e., less seriously) than deaths of white
persons under similar circumstances, and that the families of the
black decedents are injured by this disparate treatment. 
 Associated with the above, Judge made several other more
specific assertions: First, that when Judge confronted Dr. Feigin
and Officer Chevalier approximately six weeks after Weems's death,
they failed to provide her basic and accurate information
concerning the circumstances of Weems's death and engaged in rude,
insulting and unprofessional behavior. Second, Judge alleges that
Officer Chevalier "insinuated" that she knew the street names for
certain drugs. Third, Judge alleges that her allegation of
disparate treatment based on race is supported by the facts of the
Kasha Blount case, a state court proceeding reported in the
newspaper which involved a black teenager who died in Dorchester
under suspicious circumstances and an allegedly mishandled autopsy
performed by Dr. Feigin. Neither separately nor taken with the
others, however, do these alleged facts give rise, by themselves,
to a reasonable inference that defendants were motivated by racial
considerations. 
 State actors will, of course, violate the Equal
Protection Clause if they deliberately and selectively deny
protective services to the members of a disfavored minority. SeeDeShaney v. Winnebago County, 489 U.S. 189, 197 n.3 (1989). But,
as we said in Dartmouth Review, "merely juxtaposing the fact of
one's race with an instance of discrimination is insufficient to
state a claim." Id. at 19. In Dartmouth Review, white student
editors of an off-campus newspaper who were suspended following a
confrontation with a black professor brought a civil rights action
against the college and various college officials, alleging that
their suspension was racially motivated. The district court
dismissed their complaint for failure to state a claim. We
affirmed, holding that "[a]bsent some meaningful, fact-specific
allegation of a causal link between defendant's conduct and
plaintiff's race, the complaint's first count cannot stand." Id. 
Thus, to survive a motion to dismiss Count I, Judge must set forth
specific factual allegations supporting a causal link between
defendants' conduct and her race.
 Count I fails to assemble "specific facts adequate to
show or raise a plausible inference that [Judge] was subjected to
race-based discrimination." Dartmouth Review, 889 F.2d at 17. 
Judge alleges that the officer defendants failed to notify her of
Weems's death because she is black. But the mere conclusory
assertion that the failure to notify was racially motivated is not
enough. She further alleges that Dr. Feigin and the officer
defendants failed to conduct, respectively, a proper autopsy and an
adequate homicide investigation because she is black. But such
errors, like the failure to notify, do not by themselves
necessarily imply racial animus, and the mere conclusory allegation
of such will not suffice. 
 The only factual allegations in the complaint that,
liberally read, might be arguably construed as implying any racial
animus toward Judge are that Dr. Feigin was rude to Judge and that
Officer Chevalier was insensitive and "insinuated" that Judge
should know the street names of certain drugs. But we think these
fall short of indicating that race was a causal factor. The
rudeness and insensitivity might have resulted from any of a host
of factors, including irritability, defensiveness in the face of
criticism, dislike for suspected drug users, their friends and
families, or simple arrogance. 
 We have said that the facts alleged must "specifically
identify the particular instance(s) of discriminatory treatment
and, as a logical exercise, adequately support the thesis that the
discrimination was unlawful." Correa-Martinez, 903 F.2d at 53. 
The allegations concerning the behavior of Dr. Feigin and Officer
Chevalier during their conversations with Judge, if true,
undoubtedly evince rude and unprofessional conduct. But rude and
unprofessional conduct are, unfortunately, all too prevalent in the
world. Persons from any racial background may sometimes encounter
it. That behavior without more reprehensible as it is falls
short of creating a reasonable inference that Judge's race as
opposed to other factors was a motivating factor in defendants'
alleged responses subsequent to Weems's death. Were we to hold
otherwise, any unsatisfactory dealings between a public official
and a minority, female or other citizen falling into a protected
category would give rise, prima facie, to a potential equal
protection claim. 
 We recognize that it will be the rare case in which a
plaintiff can point to specific racist statements made by
government officials. Intent to discriminate may be demonstrated
by circumstantial evidence. See Washington v. Davis, 426 U.S. 229,
253 (1976) (Stevens, J., concurring). But the facts alleged still
must, "as a logical exercise," Correa-Martinez, 903 F.2d at 53,
adequately support the thesis that defendants' omissions were
motivated, at least in part, by racial animus. Here, where after-
the-fact rude behavior and a single "insinuation" are not tied to
other allegations of fact that support the thesis that black deaths
and white deaths are treated differently by the police and medical
examiner in Lowell, that support is lacking. 
 The rule that we accept plaintiff's well-pleaded factual
averments and indulge every reasonable inference hospitable to her
case "does not entitle a plaintiff to rest on 'subjective
characterizations' or conclusory descriptions of a 'general
scenario which could be dominated by unpleaded facts.'" Id. at 53
(quoting Dewey v. Univ. of New Hampshire, 694 F.2d 1, 3 (1st Cir.
1982), cert. denied, 461 U.S. 944 (1983)). Judge's reliance on the
case of Kasha Blount, who died in Dorchester, Massachusetts in 1990
under allegedly suspicious circumstances and whose autopsy report
was apparently prepared by Dr. Feigin, does not cure the lack of
specificity with regard to improper motive in her complaint. We
repeat what we said in Dartmouth Review: 
 It is apodictic that evidence of past
 treatment toward others similarly
 situated can be used to demonstrate
 intent in a race discrimination suit. 
 To put flesh upon the bare bones of
 this theory, appellants' obligation was
 to identify and relate specific
 instances where persons situated
 similarly 'in all relevant respects'
 were treated differently . . . 

889 F.2d at 19 (citations omitted). Blount's death was
investigated by the Dorchester Police Department. There is no
allegation that the Lowell Police Department was involved. Thus, 
with respect to the officer defendants, the circumstances of the
Blount case are not similar "in all relevant respects." As to Dr.
Feigin, even assuming he mishandled the Blount case, there is only
the opinion of Blount's mother, as stated in the press, to suggest
any racial motivation behind Dr. Feigin's alleged failings in the
Blount case. 
 Judge asks us to view defendants' behavior in the total 
context of the various alleged omissions on the part of defendants,
including their failure to notify Weems's family members and the
allegedly improper investigation and autopsy. But we do not find
the totality of circumstances sufficient to make out her
constitutional claim. Her allegations boil down to inept, sloppy
police and coroner performance at the time of Weems's death
followed by rude, defensive behavior by the same officials some
weeks later when Weems's family complained. That combination of
interrelated, offensive events falls short of raising a reasonable
inference of racial motivation for the acts or omissions alleged. 
 Judge, in short, has merely "juxtapos[ed] the fact of
one's race," Dartmouth Review, 889 F.2d at 19, with conduct which,
on its face, may as likely stem from negligence and incompetence as
from racial animus. This is insufficient to state a claim of race-
based discrimination. See Correa-Martinez, 903 F.2d at 53
(plaintiff "may not prevail simply by asserting an inequity and
tacking on the self-serving conclusion that the defendant was
motivated by discriminatory animus"). As we stated in Dartmouth
Review: 
 Gauzy generalities, unsupported
 conclusions, subjective
 characterizations, and problematic
 suppositions can sprout as easily as
 crabgrass in an imaginative litigant's
 (or lawyer's) word processor. 
 Therefore, to avoid tarring defendants'
 reputations unfairly and to prevent
 potential abuses, we have consistently
 required plaintiffs to outline facts
 sufficient to convey specific instances
 of unlawful discrimination. 

889 F.2d at 16. See also Correa-Martinez, 903 F.2d at 51 
(deferential reading of complaint does not require that we credit
"bald assertions, periphrastic circumlocutions, unsubstantiated
conclusions, or outright vituperation"). 
 As Judge's complaint contains no specific factual
allegation which, alone or in combination with other well-pled
facts, gives rise to a reasonable inference that defendants were
motivated by anti-black racial animus rather than by other equally
plausible factors at the time of the alleged omissions, we affirm
the district court's dismissal of Count I of the Third Amended
Complaint. 
 The failure of Count I to state a claim is fatal to 
Count II. In Count II, Judge alleges that the City of Lowell
violated her right to equal protection because it (1) failed to
establish a custom and policy that prohibited discrimination on the
basis of race in the discharge of the duties at issue, and (2)
failed to recruit and train police officers in such a way as to
ensure that they would not discriminate on the basis of race in the
discharge of their duties. 
 We have held that Judge failed sufficiently to allege any
constitutional injury in Count I of the complaint. Thus, even if
the City of Lowell failed to take adequate steps to prohibit
discrimination and failed to recruit and train its police officers
so as to ensure that they would not discriminate, there is no
allegation in the complaint sufficient to show that such a policy
caused harm to the plaintiff Judge who, for reasons already
discussed, suffered no constitutional injury. A section 1983
claimant cannot recover unless the claimant also proves that the
custom caused the resulting injury or deprivation of rights. SeeMonell v. New York City Dep't of Social Serv., 436 U.S. 658, 694
(1977). Thus, the dismissal of Count II was proper. 
 This is not to say that Judge may be left without a
remedy. Defendants' failure to act upon the information they
discovered when they found Weems's body, along with their allegedly
rude and insensitive behavior, could conceivably give rise to
claims under Massachusetts law. Weems's wife, and perhaps other
family members, may have viable state law claims against defendants
arising from the handling of Weems's body, although we offer no
opinion concerning that possibility. See Soto v. Flores, 103 F.3d
1056, 1072 (1st Cir.) ("Whether this deplorable scenario is
actionable under Puerto Rican law we leave, as we must, to
others."), cert. denied, 118 S. Ct. 71 (1997). Our present holding
is simply that the allegations set forth in the complaint do not
properly assert violations of the Equal Protection Clause of the
Fourteenth Amendment.
B. Denial of Judge's Motion to Amend the Complaint
 The district court denied Judge's motion for leave to
file a Fourth Amended Complaint. Judge challenges the denial on
appeal. We review the district court's denial of leave to amend
the complaint "for an abuse of discretion, and defer to the
district court if any adequate reason for the denial is apparent on
the record." Grant v. News Group Boston, Inc., 55 F.3d 1, 5 (1st
Cir. 1995).
 Under Federal Rule of Civil Procedure 15(a), a litigant
may amend a pleading once as a matter of right before a responsive
pleading is filed and subsequently by the parties' consent or "by
leave of court." Fed. R. Civ. P. 15(a). While "leave [to amend]
shall be freely given when justice so requires," id., "the liberal
amendment policy prescribed by Rule 15(a) does not mean that leave
will be granted in all cases," 6 Charles Alan Wright et al.,
Federal Practice and Procedure 1487, at 611 (2d ed. 1990). Where
an amendment would be futile or would serve no legitimate purpose,
the district court "should not needlessly prolong matters." 
Correa-Martinez, 903 F.2d at 59; see also Foman v. Davis, 371 U.S.
178, 182 (1962) (citing "repeated failure to cure deficiencies by
amendments previously allowed" and "futility of amendment" as
proper grounds for denial of leave to amend).
 Judge amended her complaint three times prior to
dismissal. After she filed her Second Amended Complaint, the court
advised the parties of its doubt that Judge had set forth
sufficient factual allegations to plead an inference of racial
animus. Nevertheless, the court allowed Judge to file a Third
Amended Complaint prior to ruling on defendants' then-pending
motions to dismiss. In her Third Amended Complaint, Judge added
two defendants. Judge also added several new paragraphs to the
complaint that expanded on her allegation that the defendants had
violated various duties owed to her and that these breaches
constituted a "pattern or practice" of discrimination. As to the
latter, Judge appended to the complaint newspaper articles
concerning the Kasha Blount case. None of these amendments,
however, added any non-conclusory factual allegations to support
the conclusion that defendants' alleged omissions were motivated by
racial animus. The district court dismissed the Third Amended
Complaint, and we have concluded that it properly did so.
 Judge sought leave to file a Fourth Amended Complaint. 
The district court denied Judge's motion without comment. The only
difference between the Third Amended Complaint and the proposed
Fourth Amended Complaint was the addition of a new paragraph that
identified two reported cases from the Massachusetts Court of
Appeals in which the victims, allegedly white, died under
circumstances alleged to be similar to those of Weems. Judge
alleged that these victims' cases resulted in a full investigation
and prosecution because the victims, unlike Weems, were white.
 These new allegations failed to cure the fundamental
defect in Judge's complaint. The two reported decisions identified
by Judge do not indicate which, if any, of the officer defendants
were involved in the investigations. Nor do the opinions identify
Dr. Feigin as the medical examiner in either case. Even assuming
that the "suspicious circumstances" in the two reported cases were
nearly identical to those in the present case, there is nothing in
the reported opinions that remotely suggests that the performances
of the government officials in those cases were motivated by the
victims' race. The allegations involving these decisions do not
supply the missing causal link between defendants' alleged
omissions in this case and Judge's race. Even accepting the
proposed amendments, Judge has alleged only that in one case (the
Blount case in Dorchester) the officials acted improperly, while in
two other cases the officials acted properly. Without more, she
then attributes the officials' acts and omissions to the race of
the victim-decedents. This inference is no more than a "general
scenario which could be dominated by unpleaded facts." Dewey v.
Univ. of New Hampshire, 694 F.2d 1, 3 (1st Cir. 1982), cert.denied, 461 U.S. 944 (1983). Moreover, it is a scenario that
encompasses only one case of allegedly improper conduct compared
with two cases of allegedly proper conduct. "[T]he mere existence
of disparate treatment even widely disparate treatment does not
furnish adequate basis for an inference that the discrimination was
racially motivated." Dartmouth Review, 889 F.2d at 20. 
 The amendment proffered by Judge failed to cure the
deficiency identified by the court in its examination of the Third
Amended Complaint. Granting the proposed amendment would have been
futile. Under these circumstances, we conclude that the court did
not abuse its discretion in denying Judge leave to file the Fourth
Amended Complaint.
 Affirmed. Each party to bear its own costs.